**Darrian BUNCH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–1002–CR–120.

Court of Appeals of Indiana.

Nov. 17, 2010.

Transfer Denied Jan. 21, 2011.

---

4. No mediation was previously ordered in this matter.

Kimmerly A. Klee, Greenwood, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Arturo Rodriguez II, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Darrian Bunch ("Bunch") was convicted following a jury trial of robbery[1] as a Class B felony, burglary[2] as a Class B felony, ten counts of Class B felony criminal confinement,[3] intimidation[4] as a Class C felony, and carrying a handgun without a license[5] as a Class A misdemeanor. The trial court sentenced Bunch to an aggregate sentence of fifteen years executed. On appeal, Bunch raises the following restated issues:

I. Whether Bunch's convictions are proper under prohibitions against double jeopardy;

II. Whether there is sufficient evidence to sustain Bunch's convictions for criminal confinement as to the four victims who did not testify; and

III. Whether the trial court abused its discretion in failing to issue an adequately detailed sentencing statement.

We affirm in part, reverse in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

On the afternoon of March 14, 2009, K.V., four of her five children, and her three visiting stepchildren were in K.V.'s Marion County home when she heard a knock at the front door. K.V. answered

1. *See* Ind.Code § 35–42–5–1.

2. *See* Ind.Code § 35–43–2–1.

3. *See* Ind.Code § 35–42–3–3.

4. *See* Ind.Code § 35–45–2–1.

5. *See* Ind.Code § 35–47–2–1.

the door and was greeted by a man dressed in a white, button-down, short-sleeved shirt, black tie, and "black [D]ickie pants." *Tr.* at 20. After a brief conversation with this man, K.V. closed the door and returned to her bedroom. Approximately ten minutes later, K.V. heard another knock on the door. K.V. and her fourteen-year-old son, Je.C., walked to the door and asked who was there. When the person responded, "Mike," a name that K.V. recognized, she unlocked the deadbolt. Before K.V. could open the door, two men wearing masks and carrying sawed-off shotguns pushed their way into the house.

The men ordered K.V. and her son to lay face down in the den. As the intruders searched the house, they brought the other six children into the den and also ordered them to lay face down. K.V. recognized that one of the men was wearing the same clothing as the man who had previously come to the door and that the other man was wearing a white jacket with designs on the shoulder, shorts, and some black, green, and white Nike shoes. *Id.* at 31, 37, 42. The man in the Nike shoes was later identified as Bunch.

The men asked K.V. where they could find the money, drugs, and guns, and also asked the whereabouts of K.V.'s seventeen-year-old son, De.V., who was at work. K.V. told the men that there were no guns or drugs in the house. While Bunch was searching the house, K.V.'s fifteen-year-old daughter, Ja.C., began to hyperventilate. Thereafter, Bunch entered the room, and upon seeing Ja.C.'s condition, took a small handgun out of his pocket, cocked it, put it to Ja.C.'s head, and said, "Shut her up before I do." *Id.* at 38, 44. After using her inhaler and drinking some water, Ja.C. was able to calm down. K.V., however, thought that Bunch was going to shoot her daughter. *Id.* at 44.

Bunch again left the den to search the house. When Bunch returned, both men stepped outside of K.V.'s presence to talk and, apparently intending to leave, Bunch took off his mask. *Id.* at 170–71, 175. During this time, K.V.'s niece knocked on the front door of the den. The intruders instructed K.V. to "[g]et rid of whoever was at the door." *Id.* at 41. On her way to the door, K.V. was able to see Bunch's face as he ran past her trying to pull his mask back over his face. Bunch's accomplice held a shotgun to K.V.'s head while she spoke with her niece. After the niece left, Bunch and his accomplice instructed K.V. to return to the den and cover her face.

Shortly thereafter, the men again asked K.V. where she kept the money. Bunch took K.V. to her bedroom, where she gave them $500 in cash and two lottery tickets that she had hidden in her closet. Bunch and his accomplice searched through drawers, ransacked the house, cut the phone lines, and removed the batteries from the cell phones. K.V. thought the men were going to kill her family. *Id.* at 56. Before leaving, Bunch took K.V.'s cell phone number and obtained information from her "ID" card. *Id.* at 54. Bunch also threatened that he and his accomplice would find and kill K.V. and her family if K.V. went to the police. *Id.* at 56. While leaving, the men instructed everyone to keep their heads down for another fifteen to twenty minutes. K.V. testified that Bunch and his accomplice were in her house for "[a]bout two and a half hours." *Id.* at 75. After the intruders left, K.V. drove with the seven children to pick up De. V. from work. Still afraid, K.V. did not contact the police until more than an hour later. At the police station, K.V. identified Bunch from a photo lineup.

Bunch was charged with Class B felony robbery against K.V., Class B felony bur-

glary for breaking into K.V.'s home, Class B felony criminal confinement (one for each of the seven children and three for confining K.V.[6]), Class C felony intimidation for threatening Ja.C. and holding a gun against her head, Class A misdemeanor criminal mischief for cutting the phone wires, and Class A misdemeanor carrying a handgun without a license. A jury acquitted Bunch of the criminal mischief count, but found him guilty of the remaining fourteen charges. At the sentencing hearing, Bunch was sentenced to twelve years for each of the Class B felonies and one year for carrying a handgun without a license, all executed and ordered to be served concurrently. Bunch was also sentenced to three years for his intimidation conviction, which was ordered to be served consecutively to the other sentences. Bunch received an aggregate sentence of fifteen years executed. Bunch now appeals.

## DISCUSSION AND DECISION

### I. Double Jeopardy

Bunch does not appeal his robbery conviction; instead, he asks this court to find that all of his remaining convictions violate the prohibition against double jeopardy under the Indiana Constitution.[7] The Indiana Double Jeopardy Clause provides, "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. I, § 14. We analyze alleged violations of this clause pursuant to our Supreme Court's opinion in *Richardson v. State*, 717 N.E.2d 32 (Ind.1999). In *Richardson*, our Supreme Court held that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." 717 N.E.2d 32, 49 (Ind.1999) (emphasis in original). Here, Bunch claims that his convictions constitute double jeopardy under the "actual evidence" test.

■■■■ Under the "actual evidence" test, a defendant must demonstrate a *reasonable possibility* that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish all of the essential elements of a second challenged offense. *Id.* at 53. "Application of this test requires the court to 'identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective[.]'" *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind.2008) (quoting *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002)). Therefore, we consider the essential elements of the offenses, the charging

---

6. The criminal confinement counts were charged as follows: Count Ill-confining K.V. on the floor of the den; Count IV-confining fifteen-year-old Ja.C. on the floor of the den; Count V-confining fourteen-year-old Je.C. on the floor of the den; Count VI-confining twelve-year-old Dy.V. on the floor of the den; Count VII-confining eleven-year-old Mz.C. on the floor of the den; Count VIII-confining fourteen-year-old Mq.C. on the floor of the den; Count IX-confining eight-year-old Mk.C. on the floor of the den; Count X-confining three-year-old A.V. on the floor of the den; Count XI-confining K.V. by forcing her to move from the living area to a bedroom; and

Count XII-confining K.V. by forcing her to move from the living area to the front door.

7. Bunch alleges that his multiple convictions violate the double jeopardy provisions of both the federal and state constitutions. *Appellant's Br.* at 7. However, we note that Bunch contends that his convictions violate the "actual evidence" test; "an analysis not required by the federal constitution." *Lee v. State*, 892 N.E.2d 1231, 1233 (Ind.2008). Therefore, we presume he is proceeding only with an Indiana constitutional argument.

information, the jury instructions, the evidence, and the arguments of counsel. *Id.* The term "reasonable possibility" "turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions." *Id.* at 1236.

The elements of robbery as a Class C felony are satisfied when a person: (1) knowingly or intentionally; (2) takes property from another person; (3) by using or threatening the use of force or by putting any person in fear. *See* Ind.Code § 35–42–5–1. To convict Bunch of the elevated crime of robbery as a Class B felony, the State had to prove that the crime was committed: (1) while armed with a deadly weapon; or (2) results in bodily injury to any person other than the defendant. *Id.* In this case, the State offered the following evidence. Once inside the home, Bunch, armed with a sawed-off shotgun, threatened K.V., demanded money, drugs, and guns, and emptied drawers and ransacked her home in his two-hour search. After K.V. admitted that she had money hidden, Bunch followed her to her bedroom and, while still armed, took $500 and two lottery tickets from K.V. The jury found that the State had proved its case and convicted Bunch of robbery as a Class B felony. He asks this court to vacate his convictions for burglary, intimidation, carrying a handgun without a license, and ten counts of criminal confinement. *Appellant's Br.* at 16.

### A. Burglary

■ Bunch contends that the State referred to the "presence of deadly weapons" and the "brandishing of deadly weapons" as evidence to prove both the charge of robbery and of burglary, each as a Class B felony. *Appellant's Br.* at 9. Bunch, therefore, asserts that his burglary conviction was in violation of Indiana's Double Jeopardy Clause. We disagree. The elements of burglary as a Class C felony are satisfied when a person: (1) breaks and enters; (2) the building or structure of another person; (3) with intent to commit a felony therein. Ind.Code § 35–43–2–1. To convict Bunch of the elevated crime of burglary as a Class B felony, the State had to prove: (1) that Bunch committed the crime while armed with a deadly weapon; *or* (2) the building or structure he entered was a dwelling. *See* Ind.Code § 35–43–2–1(1) (emphasis added). The charging information alleged that Bunch "did break and enter the building or structure, and dwelling of [K.V.], . . . with intent to commit the felony of Robbery therein." *Appellant's App.* at 47. Here, the State proved that Bunch entered into K.V.'s dwelling with the intent to commit robbery therein; no evidence of a deadly weapon was required. Because the burglary was complete before the robbery began, Bunch's conviction for both robbery and burglary did not violate Indiana's Double Jeopardy Clause.

### B. Criminal Confinement

Bunch also contends that his convictions for criminal confinement violated the prohibition against double jeopardy because the presence of a deadly weapon was critical to the State's prosecution of the robbery as well as the ten counts of criminal confinement. A person who knowingly or intentionally: (1) confines another person without the other person's consent; or (2) removes another person, by fraud, enticement, force, or threat of force, from one place to another, commits Class D felony criminal confinement. Ind.Code § 35–42–3–3(a). However the offense is a Class B Felony if it is committed while armed with a deadly weapon or results in serious bodily injury to another person. Ind.Code § 35–42–3–3(b)(2).

We first address Counts IV through X. The charging information and jury instructions indicate that the State's theory for Count I, robbery as a Class B felony, was that Bunch, while armed with a deadly weapon, took lottery tickets and $500 in cash from K.V. by placing her in fear. *Appellant's App.* at 47, 80. As to Counts IV through X (the counts charging confinement of each the seven children), the charging information and jury instructions indicate that the State's theory for confinement was that Bunch, while armed with a deadly weapon, confined each of the seven children by making them lay on the floor of the den. *Id.* at 48–49, 89–95. Because different victims were involved in the robbery and in each count of criminal confinement, different evidence was used to convict Bunch of each of these crimes. In situations where the defendant harms or threatens harm to distinct victims, double jeopardy is not violated by multiple convictions. *See Bald v. State,* 766 N.E.2d 1170, 1172 n. 4 (Ind.2002) (double jeopardy is not violated where convictions arise from situation where separate victims are involved); *Rawson v. State,* 865 N.E.2d 1049, 1055 (Ind.Ct.App.2007) (where convictions arise from situation where separate victims are involved, no double jeopardy violation exists), *trans. denied.*

We next address Bunch's allegation that his convictions for robbery and criminal confinement of K.V. violate double jeopardy. Bunch contends that these convictions violate double jeopardy because the threat of force required to elevate the robbery and criminal confinement to a Class B felony was established by the presence of the same deadly weapon. "[U]nder the *Richardson* actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even

several, but not all, of the essential elements of a second offense." *Spivey,* 761 N.E.2d at 833. Nevertheless, our Supreme Court has "long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson.*" *Pierce v. State,* 761 N.E.2d 826, 830 (Ind.2002) (citing *Richardson,* 717 N.E.2d at 55 (Sullivan, J., concurring)). These series of rules supplement the constitutional protections afforded by the Indiana Double Jeopardy Clause. *Miller v. State,* 790 N.E.2d 437, 439 (Ind.2003). Because one of those common law rules is consistent with Bunch's argument—that is, "[c]onviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished," *Richardson,* 717 N.E.2d at 56 (Sullivan, J., concurring)—we will address Bunch's argument in that context.

Our Supreme Court's decision in *Miller* is directly on point. There, the defendant argued that his convictions violated double jeopardy because of "multiple enhancements for the presence of a singular knife." *Miller,* 790 N.E.2d at 438. The Supreme Court found this did not constitute double jeopardy under the actual evidence test of *Richardson.* *Id.* The Court continued its analysis, however, by noting the existence of a common law supplement to constitutional double jeopardy protections, which the Court had recognized in *Pierce.* *Id.*

> *Pierce* applied the rule that two crimes may not be enhanced by the same bodily injury. [761 N.E.2d] at 830. This was an application of the broader rule previously expressed by Justice Sullivan prohibiting conviction and punishment "for an enhancement of a crime where the

enhancement is imposed for the *very same behavior* or harm as another crime for which the defendant has been convicted and punished." *Richardson*, 717 N.E.2d at 56 (Sullivan, J., concurring) (emphasis added). The repeated use of a weapon to commit multiple separate crimes is not "the very same behavior" precluding its use to separately enhance the resulting convictions. *Rather, the use of a "single deadly weapon during the commission of separate offenses may enhance the level of each offense."* *Gates v. State*, 759 N.E.2d 631, 633 n. 2 (Ind.2001).

*Miller*, 790 N.E.2d at 439 (emphasis added); *see also Marshall v. State*, 832 N.E.2d 615, 622 (Ind.Ct.App.2005) (three convictions for Class A felony child molestation committed with the same knife did not constitute double jeopardy), *trans. denied.* Under the reasoning set forth in *Miller*, the use of the sawed-off shotgun to enhance Bunch's convictions for confinement and robbery did not constitute double jeopardy.[8]

■ Finally, Bunch contends that his conviction for Counts III, XI, and XII (the three counts of confinement against K.V.) violate the Indiana Double Jeopardy Clause because, regardless of whether K.V. was confined or removed, they constitute only one distinct confinement. We agree. Crimes including kidnapping and the lesser included offense of confinement are defined under the continuing crime doctrine. *Bartlett v. State*, 711 N.E.2d

497, 500 (Ind.1999). Under this doctrine, the span of the kidnapping or confinement is determined by the length of time of the unlawful detention necessary to perpetrate the crime. *Id.* It begins when the unlawful detention is initiated and ends only when the victim both feels, and is in fact, free from detention. *Id.* Although a single incident of confinement may result in two separate convictions, in such cases the confinement must be divisible into two separate parts. *Boyd v. State*, 766 N.E.2d 396, 400 (Ind.Ct.App.2002). A confinement ends when the victim both feels and is, in fact, free from detention, and a separate confinement begins if and when detention of the victim is re-established. *Id.*

Bunch's conviction in Count III was based upon his removing K.V., at gunpoint, from the hallway of her home, taking her to the den, and forcing her to lay face down. His conviction under Count XI was based upon his removing her from the den and taking her, at gun point, upstairs to her bedroom in order to obtain the money and lottery tickets. Finally, Bunch's conviction under Count XII was based upon his ordering K.V. to leave the den and go to the front door in order to dissuade her niece from entering the home. There was no evidence, nor does the State point to any, suggesting that K.V. felt free and was, in fact, free from detention at any time within the span of her confinement during Bunch's home invasion. Regardless of the number of rooms to which she

---

8. We also note that Bunch's convictions for robbery and criminal confinement do not violate the actual evidence test under *Richardson*. In *Hopkins v. State*, our Supreme Court noted "confinement is not a lesser-included offense of robbery." 759 N.E.2d 633, 639 (Ind.2001). "Furthermore, where the confinement of a victim is greater than that which is inherently necessary to rob them, the confinement, while part of the robbery, is also a separate criminal transgression." *Id.* Here,

Bunch's confinement of K.V. extended well beyond what was necessary to rob her; Bunch forced her to the floor at gunpoint, remained in the home for more than two hours, and, while leaving the residence, threatened K.V. to remain on the floor for an additional fifteen minutes after Bunch left. Bunch's conviction for both the robbery and criminal confinement of K.V. did not violate the prohibition against double jeopardy.

was confined, this was but one continuous period of confinement, and Bunch's convictions under Counts III, XI, and XII flowed from that offense. Bunch's convictions and sentences in Counts III, XI, and XII violated the double jeopardy clause of the Indiana Constitution. Accordingly, his convictions and sentences in Counts XI and XII, which merged into his conviction and sentence in Count III, must be vacated.

### C. Intimidation

■ Bunch contends that the presence of a deadly weapon was again used, in violation of the prohibition against double jeopardy, to elevate his intimidation conviction to a Class C felony. To convict Bunch of intimidation as a Class C felony, the State had to prove that Bunch: (1) communicated; (2) a threat to commit a forcible felony; (3) with the intent that the other person engage in conduct against the other person's will; (4) while drawing or using a deadly weapon. Ind.Code § 35–45–2–1. As noted above, no double jeopardy violation occurs where the same weapon is used to elevate multiple offenses. *Miller*, 790 N.E.2d at 439. Furthermore, here, there is no reasonable possibility that the jury used the same evidentiary facts of the other crimes to establish the essential elements of this crime. *Richardson*, 717 N.E.2d at 53. The information charged that Bunch, while holding a handgun to Ja.C.'s head, communicated a threat to kill her if she did not stop causing a disruption. *Appellant's App.* at 50. Bunch was armed with a sawed-off shotgun while he committed the other offenses. Therefore, it was reasonable to conclude that Bunch's conviction for intimidation did not constitute double jeopardy.

### D. Carrying a Handgun without a License

■ We next address Bunch's contention that his convictions for robbery and carrying a handgun without a license violate double jeopardy. To prove the offense of robbery, as a Class B felony, the State presented evidence that Bunch robbed K.V. while armed with a deadly weapon. That deadly weapon was a shotgun, which was a different weapon than the one charged in carrying a handgun without a license. To convict Bunch for carrying a handgun without a license the State had to prove that Bunch carried a handgun on or about his person, away from his dwelling or business. Ind.Code § 35–47–2–1. The burden then shifted to Bunch to establish that he possessed a valid license. *Thy Ho v. State*, 725 N.E.2d 988, 992 (Ind.Ct.App.2000) (citing *Harris v. State*, 716 N.E.2d 406, 411 (Ind.1999)). Here, Bunch neither made this proof, nor could he have. At the time he committed this crime Bunch was only seventeen. Indiana Code section 35–47–2–3(g)(3) provides in pertinent part, that a license to carry a handgun shall not be issued to any person who is under the age of eighteen. Bunch's conviction for carrying a handgun without a license did not constitute double jeopardy.

## II. Sufficiency of the Evidence

■ Bunch next contends that there was insufficient evidence to support his criminal confinement convictions for Counts VII, VIII, IX, and X. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or assess the credibility of witnesses. *Chatham v. State*, 845 N.E.2d 203, 205 (Ind.Ct. App.2006). Rather, we look to the evidence and the reasonable inferences that may be drawn therefrom that support the conviction. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

To convict Bunch of Class B felony criminal confinement, the State was required to prove beyond a reasonable doubt that, while armed with a deadly weapon, he knowingly or intentionally confined eleven-year-old Mz.C. (Count VII), fourteen-year-old Mq.C. (Count VIII), eight-year-old Mk.C. (Count IX), and three-year-old A.V. (Count X) all *without their consent.* Ind. Code § 35–42–3–3 (emphasis added). Bunch's sole challenge goes to the element of consent. He contends that although the evidence shows that the children were being held in the den, in the absence of the children's testimony, the jury could not have known whether the confinement was non-consensual. We disagree.

■■■■ The testimony of the children is not necessary to establish their lack of consent if the evidence supports a reasonable inference that they did not consent to being held in the den. K.V. testified that the intruders, carrying sawed-off shotguns, entered K.V.'s home and ordered K.V. and her fourteen-year-old son to lay face down on the den floor. *Tr.* at 31–33. Thereafter, one of the intruders remained with K.V. and Je.C. in the den while the other man searched the home, found the other children and, while still armed with a deadly weapon, forced them to the den. *Id.* at 33. K.V. testified that, once in the den, "[e]veryone was ordered to lie down." *Id.* Fifteen-year-old Ja.C. testified that when the men initially entered the house, she heard her mother say, "Don't shoot me." *Id.* at 189. Peaking around the corner and

seeing two men wearing masks and carrying guns, Ja.C. ran upstairs. Soon thereafter, Bunch came upstairs carrying a gun, forced her to the den, and had her lay face down with K.V. and the children. *Id.* at 191–92. The evidence reveals that the intruders carried guns, ordered everyone in the house to lay face down in the den, and that the mother and the oldest child in the house did not consent to being held. This evidence supports a reasonable inference that the four children, ages fourteen, eleven, eight, and three, likewise did not consent to being held in the den.[9]

## III. Sentencing

Finally, Bunch contends that the trial court abused its discretion by failing to issue an adequately detailed sentencing statement. Specifically, Bunch asserts that the sentencing statement does not adequately explain the aggregating factors that both allow the imposition of a twelve-year sentence on his Class B felonies and warrant the imposition of a consecutive sentence for his intimidation conviction.

■■■■ Trial courts are required to enter sentencing statements whenever imposing sentence for a felony offense. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). The statement must include a reasonably detailed recitation of the trial court's reasons for imposing a particular sentence. *Anglemyer*, 868 N.E.2d at 490. If the recitation includes a finding of aggravating or mitigating circumstances,

9. Bunch also asserts that in the absence of the testimony of the children, the State was relieved of its burden to prove each element of the charged offense, which in turn deprived Bunch of his right to cross-examine his accusers. Specifically, Bunch contends that his right to confrontation was violated when he was denied the opportunity to confront his accusers either in an in-court or out-of-court setting. The confrontation clause does not

apply to the children who did not testify. "The Confrontation Clause applies only to testimonial hearsay." *Davis v. Washington*, 547 U.S. 813, 824, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). Furthermore, the evidence upon which Bunch was convicted was offered, in part, by K.V. and Ja.C, both of whom Bunch had the opportunity to confront and cross-examine.

then the statement must identify all significant mitigating and aggravating circumstances and explain why each circumstance has been determined to be mitigating or aggravating. *Id.* Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Id.* An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.*

■ Once the trial court has entered a sentencing statement, which may or may not include the existence of aggravating and mitigating factors, it may then "impose any sentence that is ... authorized by statute; and ... permissible under the Constitution of the State of Indiana." Ind. Code § 35–38–1–7.1(d). If the sentence imposed is lawful, this court will not reverse unless the sentence is inappropriate based on the character of the offender and the nature of the offense. Ind. Appellate Rule 7(B); *Boner v. State,* 796 N.E.2d 1249, 1254 (Ind.Ct.App.2003). The burden is on the defendant to persuade this court that his sentence is inappropriate. *Patterson v. State,* 909 N.E.2d 1058, 1063 (Ind. Ct.App.2009).

At the close of Bunch's sentencing hearing, the trial court made the following statements:

> The Court sentences based upon those facts and the factors that go into sentencing. The Court notes that the Defendant, in terms of mitigating circumstances, the Defendant is eighteen years of age. He does not have a significant criminal history, although he does have a carrying a handgun without a license, which is a weapons offense. This being a weapons charge and this event occurring within a very short time of the true finding for that weapons offense. So, the Court finds it's a mitigating circumstance, not an overriding or significant mitigating circumstance, his age of eighteen, the Court does find as a mitigating circumstance. The Court does find as aggravating circumstance that there were multiple victims involved in this case. In addition to there being multiple victims, there were children. As the State indicated, four of them were under the age of twelve and a significant number of victims under the age of eighteen. The Court has heard pleas from your family and friends to not take your life away. Mr. Bunch, under the law, the Court, because there are multiple victims here, the Court ... could run a good number of these cases consecutive. In theory, because of the number of charges that you're looking at, you're looking at anywhere from six to about two hundred years or probably more. That's a substantial amount of time in terms of the dangerousness of the circumstances. The Court isn't going to take your life away. I don't show any planning here that the offense was planned to be in front of all of these children. On the other hand, I can't ignore the fact that they were there as well. This was a dangerous situation. Again under the facts, any number of people could have been seriously hurt. ... There is a second individual that has not been caught—apprehended, that is out there. The victims have every reasonable fear of believing there is another person that hasn't been brought to justice. You've been held accountable for that and would have knowledge as to who that individual is. That also is an aggravating circumstance as well. In sentencing here, the Court finds that the aggravating circumstances outweigh the mitigating circumstances slightly. The Court sentences the Defendant on Counts I through XII, each one of those

being Class B felonies, and the Court sentences the Defendant to twelve years in the Department of Corrections. As to Count XIII, the intimidation charge, the Court find that that is an aggravator, both in terms of the age of the victim and the nature of the circumstances here and sentences the Defendant to three years and runs that charge consecutive to the other twelve counts. Counts I through XII run concurrently with each other. Count XIII is three years that runs consecutive to Count I. Count XV is one year in the Department of Correction and the Court runs that concurrent. So the grand total on all of these charges is fifteen years executed in the Department of Corrections. Mr. Bunch, that is a serious sentence. I've indicated it is nowhere near the two hundred ... it's not on the minimum as well, given the number of children here and the dangerousness of the situation and the fact that there's a second individual out there.....

The sentencing range for a Class B felony is a fixed term of between six and twenty years with the advisory sentence being ten years. Ind.Code § 35–50–2–5. The sentencing range for a Class C felony is between two and eight years with the advisory sentence being four years. Ind. Code § 35–50–2–6. The sentencing range for a Class A misdemeanor is a fixed term of not more than one year. Ind.Code § 35–50–3–2.

 Here, the trial court sentenced Bunch to twelve years for each of his twelve Class B felonies. The twelve-year sentence was just two years above the advisory and, even though some of these Class B felonies involved young victims, the trial court allowed these sentences to run concurrently. Additionally, the trial court sentenced Bunch to three years for the intimidation conviction—one year less

than the advisory for a Class C felony. In ordering the sentence to run consecutively to the twelve-year sentence, the trial court explained that it "is an aggravator, both in terms of the age of the victim and nature of the circumstances." *Tr.* at 312. "[A] trial court can impose consecutive sentences if warranted by the aggravating circumstance." *Monroe v. State,* 886 N.E.2d 578, 579 (Ind.2008). We agree that such aggravating circumstances are present in this case, where Bunch, wearing a mask and carrying a sawed-off shotgun, placed a cocked handgun to the head of a fifteen-year-old girl who was hyperventilating and ordered, "Shut her up before I do." *Id.* at 38, 44.

Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer,* 868 N.E.2d at 490. The trial court did not abuse its discretion in sentencing Bunch to a fifteen-year executed sentence.

### Conclusion

Bunch's convictions and sentences for confining K.V., entered as to Counts III, XI, and XII, violate the double jeopardy clause of the Indiana Constitution. Accordingly, we remand this case with instructions that his convictions and sentences in Counts XI and XII, which merged into his conviction and sentence in Count III, must be vacated. We otherwise affirm Bunch's convictions and sentences.

Affirmed in part, reversed in part, and remanded with instructions.

RILEY, J., and BAILEY, J., concur.