**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 29 2014, 10:05 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**P. JEFFREY SCHLESINGER**
Lake County Public Defender's Office
Appellate Division
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JAIME MIGUEL CORDERO,                )
                                      )
        Appellant-Defendant,          )
                                      )
            vs.                       )     No. 45A04-1401-CR-28
                                      )
STATE OF INDIANA,                     )
                                      )
        Appellee-Plaintiff.           )

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diane Ross Boswell, Judge
Cause No. 45G03-1210-FA-26

**July 29, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Jaime Miguel Cordero appeals his convictions and sentence following a jury trial for criminal deviate conduct[1] as a Class A felony and burglary as a Class B felony.[2]  On appeal, Cordero raises the following restated issue:  Whether ordering Cordero's sentences for Class A criminal deviate conduct and Class B felony burglary to run consecutively to each other violated the principles of double jeopardy.

We affirm.

## FACTS AND PROCEDURAL HISTORY[3]

J.C., her husband, and three school-aged children lived in a subdivision in Munster, Indiana.  On the morning of June 3, 2002, J.C., who was the only one home, was doing yard work.  While outside, J.C. left her garage door up and the interior door to her home open.  Having finished the yard work, J.C. went into her home and closed and locked all of the doors behind her.  Safely inside, J.C. saw a masked man, later identified by DNA evidence as Cordero, charge at her from around a corner.  J.C. tried to run away, but Cordero caught her leg and pulled her down onto the hardwood foyer floor.  J.C. fought

---

[1] *See* Ind. Code § 35-42-4-2.  We note that, effective July 1, 2014, this statute was repealed and recodified at Indiana Code section 35-42-4-1.  Because Cordero committed this crime prior to July 1, 2014, we will apply the statute in effect at the time he committed his crimes.

[2] *See* Ind. Code § 35-43-2-1.  We note that, effective July 1, 2014, a new version of this criminal statute was enacted.  Because Cordero committed this crime prior to July 1, 2014, we will apply the statute in effect at the time he committed his crimes.

[3] The record on appeal in this case was prepared pursuant to the Indiana Supreme Court's "Order For the Indiana Court Reporting Pilot Project By Using Professional Transcription Experts On Appeal[,]" issued on November 8, 2012, and effective on November 1, 2012. *See In re Pilot Project For Expedited Transcripts In the Preparation of the Record and Briefing on Appeal*, 977 N.E.2d 1010 (Ind. 2012).  We are grateful for the ongoing cooperation of the Honorable Diane Ross Boswell of Lake Superior Court, eScribers, appellate counsel, and the Office of the Indiana Attorney General in the execution of this pilot project.

back, screaming and yelling, but Cordero grabbed the back of her head and "pounded" her head down onto the floor multiple times. *Tr.* at 39-41. J.C.'s nose began to bleed, and she later testified that she thought she was going to die. *Id.* at 41. Cordero, using an aggressive voice, told J.C. not to look at him. J.C. never saw Cordero's face.

J.C. stopped fighting, and Cordero duct taped her hands and put duct tape over her eyes and mouth by encircling her head. Cordero pulled J.C. off of the floor and pushed her into the kitchen, where he armed himself with a knife. Cordero placed the knife against J.C.'s neck and told her that he would kill her if she did not cooperate. When J.C. indicated that she could not breathe, Cordero removed the tape from J.C.'s nose.

Aggressively, Cordero moved J.C. into the dining room while still holding the knife to her neck. Cordero pushed J.C. to the floor and removed all of her clothing. Leaving her face down on the carpet, Cordero inserted his penis into J.C.'s anus, which caused her pain. Cordero subsequently ejaculated on J.C.'s back, and he wiped her back off with a cloth.

Cordero then took J.C. upstairs, where he ran a bath, put J.C. into it, and used a wash cloth to aggressively wash her "[i]n the vaginal area and the rectal area." *Tr.* at 57. At one point, when J.C. thought that Cordero had left the house, J.C. tried to leave the bathtub. Cordero, however, was still there and put J.C. back into the bathtub. Cordero told J.C. that if she told anyone he would "come back" to "get" J.C. and her boys. *Id.* at 56.

A short time later, when Cordero again left the bathroom, J.C. left the tub and was able to remove enough tape from one eye so that she could see. J.C., totally naked and still bound in duct tape, ran downstairs and out the front door to her immediate neighbor, M.A. M.A., who was in his garage, quickly provided aid and called the police. The police arrived

3

and took J.C. to the hospital. In addition to the sexual assault, a nurse who treated J.C. later testified that J.C. had bruising on her forehead, a swollen eye, dried blood on her nose, and bruises on her hands, knees, and left shoulder. *Id*. at 253-54. The next day, J.C. gave her statement to an FBI agent.

A crime-scene investigator from the Lake County Police Department identified stains on the dining room carpet where the sexual assault had occurred and removed the piece of carpeting. *Id*. at 296-97. The piece of carpeting was later transported to an FBI lab. Subsequent FBI testing of the semen on the carpeting resulted in a DNA profile of the perpetrator. Because there were no suspects that matched the DNA profile, the profile was uploaded in 2003 into the FBI's Combined DNA Index System ("CODIS").

The identity of the attacker remained a mystery for ten years until Cordero was arrested in Florida in January 2012. At that time, the police uploaded a sample of Cordero's DNA into CODIS. Cordero's DNA matched the DNA sample obtained from the carpeting sample from J.C.'s home. On March 12, 2012, Cordero was arrested in his home in Hammond, Indiana. Additional testing was completed, and the FBI confirmed that Cordero was the source of the DNA found on J.C.'s carpeting.

The State charged Cordero with Class A felony criminal deviate conduct and Class A felony burglary. Cordero was tried by jury in October 2013. At the conclusion of the State's case, Cordero moved for judgment on the evidence, which the trial court denied. At the completion of the trial, the jury found Cordero guilty as charged. At sentencing, Cordero argued that sentencing him for both criminal deviate conduct and burglary would violate double jeopardy concerns. *Tr*. at 655. The trial court reduced Cordero's Class A

4

felony burglary conviction to a Class B felony conviction on the basis "that the enhancement of the burglary to an A is based on the same conduct that the criminal deviate conduct is based on." *Id*. at 658. Cordero was sentenced to thirty-five years for the Class A felony criminal deviate conduct conviction and a consecutive ten years for the Class B felony burglary conviction, for an aggregate sentence of forty-five years executed at the Department of Correction. Cordero now appeals.

## DISCUSSION AND DECISION

The Indiana Double Jeopardy Clause provides, "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. I, § 14. A trial court's legal conclusion regarding whether convictions and sentences violate double jeopardy principles is reviewed de novo. *Sloan v. State*, 947 N.E.2d 917, 920 (Ind. 2011). We analyze alleged violations of Indiana's Double Jeopardy Clause pursuant to our Supreme Court's opinion in *Richardson v. State,* 717 N.E.2d 32 (Ind. 1999). In *Richardson,* our Supreme Court held that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." 717 N.E.2d at 49 (emphasis in original). Citing *Richardson*, Cordero contends that applying the "actual evidence test," his convictions for burglary and criminal deviate conduct violate Indiana's Double Jeopardy Clause. *Appellant's Br*. at 8.

Under the "actual evidence" test, a defendant must demonstrate a *reasonable possibility* that the evidentiary facts used by the fact-finder to establish the essential

5

elements of one offense may also have been used to establish all of the essential elements

of a second challenged offense. *Richardson*, 717 N.E.2d at 53.

> "Application of this test requires the court to 'identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective[.]'" *Lee v. State,* 892 N.E.2d 1231, 1234 (Ind. 2008) (quoting *Spivey v. State,* 761 N.E.2d 831, 832 (Ind. 2002)). Therefore, we consider the essential elements of the offenses, the charging information, the jury instructions, the evidence, and the arguments of counsel. *Id.* The term "reasonable possibility" "turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions." *Id.* at 1236.

*Bunch v. State*, 937 N.E.2d 839, 845-46 (Ind. Ct. App. 2010), *trans. denied*.

Cordero was charged with criminal deviate conduct as follows: [O]n or about June

3, 2002 . . ., [Cordero] did knowingly or intentionally, cause [J.C.] to perform or submit to

deviate sexual conduct when [J.C.] was compelled by deadly force or threat of deadly force.

*Appellant's App.* at 7. Final Instruction Number 2 instructed the jury, in pertinent part, as

follows:

> CRIMINAL DEVIATE CONDUCT, a Class A felony, is defined by statute in the State of Indiana as follows:
> . . . .
> Before you may convict the defendant of the offense of Criminal Deviate Conduct as a Class A felony, the State must have proved each of the following elements:
> 1) The defendant
> 2) knowingly or intentionally
> 3) caused [J.C.] to perform or submit to deviate sexual conduct and
> 4) the crime was committed by using or threatening the use of deadly force.

*Id*. at 67. Final Instruction Number 4 instructed the jury in pertinent part: "Deviate sexual

conduct means an act involving: 1) a sex organ of one person and the mouth or anus of

another person . . . ." *Id*. at 69.

Cordero was charged with burglary as follows: "[O]n or about June 3, 2002 . . . [Cordero] did break and enter the dwelling of [J.C.] with intent to commit a felony in it, which resulted in bodily injury to [J.C.] . . . ." *Id.* at 7. Final Instruction Number 3 instructed the jury, in pertinent part, as follows:

> BURGLARY, a Class A felony, is defined by [s]tatute in the State of Indiana as follows:
> . . . .
> To convict the defendant of a crime of Burglary, a Class A felony, the State must have proven each of the following elements beyond a reasonable doubt:
> The defendant
> 1) broke and entered the dwelling of [J.C.];
> 2) with intent to commit a felony in it;
> 3) which resulted in bodily injury to [J.C.].

*Id.* at 68. Final Instruction Number 5 provided: "Bodily injury means any impairment of physical condition, including physical pain." *Id.* at 70.

Regarding the burglary conviction, Cordero does not deny that he broke and entered J.C.'s dwelling. *Appellant's Br.* at 9. Instead, he contends that proof of burglary required evidence he intended to commit a felony therein, and that this evidence was established by Cordero's commission of the felony of criminal deviate conduct. Accordingly, because criminal deviate conduct had to be proven to convict Cordero for both crimes, and thus the same actual evidence was used, Cordero argues that the convictions for both and imposition of consecutive sentences was a double jeopardy violation. *Appellant's Br.* at 8. We disagree.

As our Supreme Court explained:

> The criminal transgression addressed by the proscription on burglary is the breaking into and entering of a building or structure of another person with

7

the intent to commit a felony. Thus, the criminal transgression of burglary is committed by a person *intending* to commit an underlying felony at the moment the building or structure is broken into and entered. The person's culpability is established at the point of entry regardless of whether the underlying intended felony is ever completed. Indeed, a person who breaks and enters without any intent to commit an underlying felony is not guilty of burglary. Because burglary and the underlying intended felony (if committed) are separate criminal transgressions, *Richardson* does not prohibit conviction and sentencing for both.

*Swaynie v. State*, 762 N.E.2d 112, 114 (Ind. 2002) (emphasis added). Here, Cordero entered J.C.'s dwelling and, by his own admission, intended to commit the felony of criminal deviate conduct therein. *Appellant's Br*. at 9. Cordero's culpability was established at the point of entry regardless of whether the underlying intended felony was ever completed. *Swaynie*, 762 N.E.2d at 114. This evidence was sufficient to convict Cordero of the lesser included offense of Class B felony burglary—the crime for which he was sentenced.[4]

After breaking into J.C.'s home, and as a separate act, Cordero intentionally placed his penis into J.C.'s anus while threatening that he would kill her if she did not cooperate. The fact that Cordero's actions after breaking into J.C.'s dwelling constituted criminal deviate conduct did not make him any less culpable for the burglary, but instead, made him additionally culpable for the offense of criminal deviate conduct. This evidence was

---

[4] To convict Cordero of Class A felony burglary, the State was required to prove that he: (1) broke and entered the building or structure of another; (2) with the intent to commit a felony in it; and (3) it resulted in bodily injury to any person other than a defendant. *See* I.C. § 35-43-2-1(2). Class B felony burglary is a lesser included offense and requires the State to prove that a defendant: (1) broke and entered the building or structure of another; (2) with the intent to commit a felony in it; and (3) that the building or structure was a dwelling. *See* I.C. § 35-43-2-1(1). While there was sufficient evidence to convict Cordero of Class A felony burglary, recognizing that J.C.'s injuries were, in part, the result of the act of criminal deviate conduct, the trial court, apparently prompted by double jeopardy concerns, sentenced Cordero only for a Class B felony conviction.

8

sufficient to convict Cordero of the crime of criminal deviate conduct without reference to the burglary conviction.

Double jeopardy principles were not violated when Cordero was convicted of and consecutively sentenced for the crimes of Class B felony burglary and Class A felony criminal deviate conduct.

Affirmed.

MAY, J., and BRADFORD, J., concur.