## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 14 2018, 10:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Steven Mynatt, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 14, 2018

Court of Appeals Case No.
18A-CR-1600

Appeal from the Marion Superior Court

The Honorable Christina R. Klineman, Judge

Trial Court Cause No.
49G17-1711-F6-45804

**Vaidik, Chief Judge.**

# Case Summary

[1] Steven Mynatt Jr. was convicted of criminal confinement, kidnapping, intimidation, and domestic battery. On appeal, Mynatt argues that his convictions for criminal confinement, kidnapping, and intimidation constitute double jeopardy under Indiana's actual-evidence test. Because the record shows that each conviction was established by separate and distinct evidence, his convictions do not fail the actual-evidence test. However, Mynatt correctly points out that the trial court imposed an illegal sentence for his Class A misdemeanor domestic-battery conviction. Therefore, we affirm Mynatt's convictions but remand for the entry of a revised sentencing order.

# Facts and Procedural History

[2] In November 2017, Mynatt and his girlfriend, A.S., were living together in Mynatt's trailer. On the evening of November 15, Mynatt asked A.S. to go next door to get a cigarette from their neighbor, Linda Roland. While A.S. was at Linda's house, she used Linda's cellphone to log into Facebook and check on a post about A.S.'s children. While A.S. was on Facebook, Mynatt sent her a message asking "what [she] was doing, who [she] was talking to and why [she] was trying to be sneaky." Tr. p. 19. A.S. told Mynatt that she "wasn't trying to be sneaky" and that she would be back in a minute. *Id.* As soon as A.S. returned to the trailer, Mynatt accused her of "trying to be sneaky and talking to somebody else." *Id.* An argument followed and, at some point, A.S. decided she wanted to leave. The trailer had only one door, and as A.S. tried to leave,

Mynatt stopped her. When A.S. tried to leave again, Mynatt "wrapped his arms around [her] head," "broke [her] tooth," and "busted [her] lip." *Id.* at 20. After Mynatt wrapped his arms around A.S.'s head, she "fell to the ground" and her leg hit a table leg causing the table to "c[o]me crashing down." *Id.* at 20-21.

[3] At that point, Linda came over to the trailer to see what was going on. Linda tried talking Mynatt "out of being angry," but then he hit A.S. under her eye. *Id.* at 21. While Linda continued trying to talk to Mynatt, A.S. left the trailer. A.S. got "more than a few feet" outside the trailer, but Mynatt grabbed her, dragged her "by [her] hair" back inside the trailer, and "threw [her] into the floor." *Id.* at 22. A.S. asked Mynatt to let her leave, but he responded that she "wasn't going nowhere and he would kill [her] before [she] left." *Id.* at 23. While she was on the floor, A.S. heard Mynatt tell Linda that "he was going to zip tie [A.S.'s] hands and feet and duct tape [her] mouth and they would find [her] body" in the trailer the next morning. *Id.* Then Linda left, leaving Mynatt and A.S. by themselves in the trailer. A.S. went to lie down on a bench, but Mynatt told her to get on the bed. A.S. did as he said and lay down on the bed. Mynatt lay down next to her on the outside of the bed so that A.S. was positioned between Mynatt and the wall, and they both went to sleep. Later, A.S. said that she slept there that night because she "was worried that if [she] tried to leave and [Mynatt] woke up, [she] didn't know what would happen to [her]." *Id.* at 24. The next morning, Mynatt told A.S. to get her stuff and leave, but then he changed his mind and told A.S. to put her stuff back inside the

trailer. A.S. opened the trailer door and pretended to gather her things, but she immediately ran to Linda's house and used Linda's roommate's phone to call her mom to come get her. Once she was at her mom's house, A.S. called the police to report what had happened the night before.

[4] The State charged Mynatt with four counts: Count I, Level 6 felony criminal confinement of A.S.; Count II, Level 6 felony kidnapping of A.S. "from outside the trailer to inside the trailer"; Count III, Level 6 felony intimidation of A.S. to "not leave" the trailer; and Count IV, Class A misdemeanor domestic battery of A.S. Appellant's App. Vol. II pp. 18-19. A bench trial was held in March 2018. In the State's closing argument, the prosecutor addressed the four charges as follows:

> [A.S.] testified that when she was in the trailer with [Mynatt], it was just the two (2) of them that were in there . . . She could not leave. There was one (1) exit to get out. [Mynatt] was standing in the way, and at one (1) point he lunged toward her. She turned because she was afraid of him, and he grabbed her around the head . . . She stated that he wrapped his arms around her. Uhm, she stated that she tried to leave because she was afraid of him but he grabbed her by her hair and pulled her back in. Uhm, she also stated that there were threats that were made.

Tr. pp. 66-67. The trial court found A.S. "to be a credible witness" and therefore found Mynatt "guilty as to all four (4) counts" and sentenced him to two-and-a-half years in the Indiana Department of Correction. *Id.* at 69.

[5] Mynatt now appeals.

# Discussion and Decision

Mynatt raises two issues on appeal. First, he contends that his convictions for criminal confinement, intimidation, and kidnapping violate the Double Jeopardy Clause of the Indiana Constitution. He also argues that the trial court erred in sentencing him.

# I. Double Jeopardy

Mynatt argues that his convictions for criminal confinement, intimidation, and kidnapping constitute double jeopardy under Indiana's actual-evidence test. Whether a defendant's convictions subjected him to double jeopardy is a question of law that we review de novo. *Wood v. State*, 999 N.E.2d 1054, 1065 (Ind. Ct. App. 2013), *trans. denied.*

Article 1, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." For purposes of Article 1, Section 14, two or more offenses constitute the "same offense" if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to obtain convictions, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). Under the actual-evidence test, we examine the actual evidence presented at trial to "determine whether each challenged offense was established by separate and distinct facts." *Id.* at 53. To find a double-jeopardy violation under the actual-evidence test "a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the

fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.*

[9] Mynatt contends that his convictions for confinement and intimidation fail the actual-evidence test because A.S.'s "confinement in the trailer was motivated by and was the direct result of threats made by [Mynatt]." Appellant's Br. p. 12. Mynatt also asserts that his convictions for confinement and kidnapping fail the actual-evidence test because the same evidence was used to establish both offenses. *See id.* at 14-15. We disagree. The record shows that these three convictions were based on a sequence of three separate events: first – confinement, second – kidnapping, and third – intimidation.

[10] The confinement conviction was based on what happened initially where Mynatt kept A.S. inside the trailer by physically blocking her when she "tried to get towards the door," "wrap[ing] his arms around [her] head," and causing her to fall to the floor. Tr. p. 20. The State's closing argument relied upon this exact evidence to show confinement. *See id.* at 67 ("[A.S.] could not leave. There was one (1) exit to get out. [Mynatt] was standing in the way, and at one (1) point he lunged toward her. She turned because she was afraid of him, and he grabbed her around the head."). Considering the charging information and the State's closing argument, Mynatt completed confinement when he used force to keep A.S. inside the trailer without her consent. *See* Ind. Code § 35-42-3-3.

[11] Next, the kidnapping conviction was based on what happened after A.S. was initially confined, when she exited the trailer, got "more than a few feet" outside, and then Mynatt grabbed her by her hair. Tr. p. 22. Once Mynatt had A.S. by her hair, he dragged her from outside the trailer to inside the trailer. At trial, in response to the defense's motion for an involuntary dismissal, *see* Ind. Trial Rule 41(b), the State asserted that A.S. "did leave" the trailer and then Mynatt "grabbed her hair and pulled her back" inside the trailer, Tr. p. 47. Reviewing the charging information and the State's response to the defense's 41(b) motion, Mynatt completed kidnapping when he used force to remove A.S. from outside the trailer to inside the trailer. *See* Ind. Code § 35-42-3-2.

[12] Finally, the intimidation conviction was based on what happened after Mynatt dragged A.S. back inside the trailer, when he told her "[t]hat she wasn't going nowhere and he would kill [her] before she left." Tr. p. 23. Thereafter, A.S. stayed inside the trailer and slept there through the night because she "was worried that if [she] tried to leave and [Mynatt] woke up, [she] didn't know what would happen to her." *Id.* at 24. The State's closing argument asserted that Mynatt made the threat to kill A.S. after he had dragged her back inside the trailer. *See id.* at 67 ("[Mynatt] grabbed [A.S.] by her hair and pulled her back in. Uhm, she also stated that there were threats that were made."). Assessing the charging information and the State's closing argument, Mynatt completed intimidation when he told A.S. that he would kill her if she left in order to make her stay inside the trailer. *See* Ind. Code § 35-45-2-1.

[13] Because the record shows that each of Mynatt's three convictions was supported by separate and distinct evidence, we conclude that his convictions for criminal confinement, kidnapping, and intimidation do not fail Indiana's actual-evidence test.[1]

## II. Sentencing

[14] Mynatt also points out that the sentencing order shows that his sentence for Count IV, Class A misdemeanor domestic battery, is 912 days and that this sentence exceeds the maximum sentence authorized by Indiana Code section 35-50-3-2. *See* Appellant's Br. p. 5 n.1. Mynatt requests that this Court "remand to the trial court to correct the sentencing order to show a one-year sentence for [d]omestic [b]attery[.]" *Id.* at 16. With no dispute from the State, we do so.

[15] Affirmed in part and remanded in part.

Mathias, J., and Crone, J., concur.

---

[1] Mynatt alternatively argues that "convictions for Kidnapping and Criminal Confinement violate the Indiana Double Jeopardy Clause because regardless of whether [A.S.] was confined or removed, this was all one distinct confinement." Appellant's Br. p. 15. He asserts that this case is like *Bunch v. State*, where we held that "one continuous period of confinement" could not be the basis for three separate confinement convictions. 937 N.E.2d 839, 848-49 (Ind. Ct. App. 2010), *trans. denied.* But as the State points out, "Mynatt was not convicted of multiple counts of criminal confinement[.]" Appellee's Br. p. 15. Rather, Mynatt was convicted of one count of confinement and one count of kidnapping. As such, Mynatt's reliance on *Bunch*—which involved only multiple confinement convictions—is misplaced.