Gerald BROUDE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 75A03–1101–CR–37.

Court of Appeals of Indiana.

Oct. 24, 2011.

June E. Bules, Plymouth, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ann L. Goodwin, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

In the instant case, a young victim of child molestation was unable to testify in court, after regressing into such behaviors as making animal noises, hiding her face, clawing at her head, and biting her nails. Over the defendant's objections that the State had not provided the required statutory notice, the trial court granted the State's request for a fourteen-day continuance to permit arrangements for the victim to testify by closed circuit television after concluding that the defendant would not be prejudiced because he was given more time than was required under the statute including additional time for further plea negotiations. The trial court also observed that in light of the victim's demeanor and her psychologist's testimony, she would more likely than not suffer emotional or mental harm if she was forced to testify in open court. The defendant was found guilty as charged.

Appellant-defendant Gerald Broude appeals his convictions for Child Molesting,[1] three counts as class A felonies and one count as a class C felony. Specifically, Broude argues that the trial court erred when it admitted the victim's testimony using a two-way closed circuit television, insofar as the State had not provided Broude with notice of its intent to have the victim testify outside the courtroom as required by statute. Additionally, Broude contends that there was insufficient evidence to sustain his conviction on one count of class A felony child molesting and that there was a material variance between the charging information and the proof presented at trial on a second count of class A felony child molesting.[2]

Under these specific facts and circumstances, we conclude that the trial court did not err by permitting the victim to testify outside the courtroom. Specifically, Broude has failed to show prejudice, inasmuch as he was given additional time to negotiate a plea agreement with the State. And the fourteen-day continuance provided Broude with more time than he was afforded under the statute. Furthermore, given the victim's deteriorated mental condition, as confirmed by her psychologist, it was more likely than not that she would have suffered emotional or mental harm if forced to testify in Broude's presence.

As for the two convictions for class A felony child molestation that Broude chal-

---

1. Ind.Code § 35–42–4–3.

2. Broude does not challenge the sufficiency of the evidence or allege a material variance on the remaining counts of class A felony child molestation and class C felony child molestation.

lenges, we find sufficient evidence to support one count; however, we also conclude that a material variance existed between the charging information and the evidence presented at trial on the second count. Therefore, we affirm in part, reverse in part, and remand with instructions that the trial court vacate Broude's conviction on Count III.

### FACTS

Broude began dating A.M.'s mother, T.M., in May 2008. By July 2008, A.M. was calling Broude "daddy." Tr. p. 238. In August 2008, T.M., A.M. and Broude moved in with T.M.'s mother. Broude was thirty-three years old at the time, and A.M. was six years old. Broude was unemployed when he lived with A.M. and T.M., and the three of them spent a great deal of time in the basement; Broude and T.M. slept on a bed in the basement, and T.M. set up a study area for A.M. in the basement. Broude would offer to assist A.M. with her homework in the basement up to three times a week.

Between September 2008 and December 2008, Broude committed several acts of molestation against A.M. More particularly, Broude pulled off A.M.'s clothing and placed his mouth on her genitals. Broude put his penis in A.M.'s mouth. Broude inserted at least one object into A.M.'s rectum. Broude also fondled A.M.'s chest using his hands and mouth.

In December 2008, A.M. reported the incidents to her mother, who ordered Broude out of the home and alerted the police. After A.M. disclosed the offenses, she began to engage in strange behaviors such as picking at her body until she developed sores and scabs, digging at her scalp until she created sores the size of a half dollar, chewing her fingernails and toenails down to the quick, pulling out fistfuls of her own hair, and banging her head against the walls. In addition, A.M. became very confrontational at school and had nightmares every night. A.M. had never engaged in these behaviors until Broude entered her life.

On February 11, 2010, the State charged Broude with four counts of class A felony child molesting. On November 16, 2010, the State amended its allegations to three counts of class A felony child molestation and one count of class C felony child molestation. Appellant's App. p. 10–11.

Broude's jury trial commenced on November 17, 2010. A.M. established her general competency to be a witness and provided some general testimony about living with Broude. A.M. stated that the offenses occurred in the basement on Broude and her mother's bed. When asked to describe the offenses in detail, A.M. testified that nothing happened and that she did not want to say where Broude had touched her.

After the State requested a short recess, A.M. testified that she remembered telling others what Broude had done and that she understood the subject of the prosecutor's questioning; however, A.M. refused to explain Broude's offenses to the jury. Instead, A.M. buried her head in her hands and her sleeve.

After another short recess, the prosecutor explained that she had been unaware that A.M. would be unable to testify, inasmuch as A.M. had visited the courtroom before the start of Broude's trial and there were no indications that she would have difficulties testifying. The trial court refused to admit the video recording of A.M.'s forensic interview as a recorded recollection, concluding that A.M. recollected the events but was refusing to testify. The trial court then recessed for the evening.

On the second day of trial, the State reported that A.M. had told her that she could not talk about sexual matters with so many adults staring at her. Dr. Stephanie Martin, A.M.'s psychologist, testified before the jury that she had diagnosed A.M. with Post Traumatic Stress Disorder (PTSD). A.M.'s PTSD symptoms had receded through treatment but had reappeared as Broude's trial approached. As the trial date neared, A.M. displayed increased anger, was afraid, made animal noises, hid her face, clawed at her head, and bit her nails.

After Dr. Martin's testimony, the State attempted to recall A.M. to testify. However, A.M. clung to her mother and begged to not testify. The State then filed a motion to continue so that arrangements could be made to permit A.M. to testify by closed circuit television. The State requested a fourteen-day continuance to December 1, 2010.

That same day, the trial court held a hearing on the State's motion outside the presence of the jury. The trial court had A.M. brought into the empty courtroom, which she physically resisted. The trial court then reviewed Indiana Code section 35–37–4–8 (the Protected Person Statute), which permits alleged victims of sex crimes to testify by closed circuit television if certain conditions are satisfied, including notifying the defendant ten days before trial.

The State explained to the trial court that it did not notify Broude ten days before the beginning of his trial of its intention to have A.M. testify by closed circuit television because A.M. had not displayed any reluctance to testify before trial. Broude's counsel argued that the Protected Person Statute did not provide any exception to the ten-day requirement and that Broude had been prejudiced because had he known that A.M. was to going to be permitted to testify outside of open court, Broude, "might have been more receptive to some kind of an agreement." Tr. p. 102.

The trial court heard testimony from Dr. Martin that A.M. was "falling apart." *Id.* at 103. Specifically, A.M. was clawing at her head, shaking, and biting her nails. Dr. Martin opined that if A.M. was forced to testify in open court in Broude's physical presence, she would likely sustain additional emotional or mental harm and might have to be hospitalized.

After hearing argument from counsel, the trial court noted that the Protected Person Statute was created to allow protected persons to testify in a matter that balanced the right of a defendant to confront witnesses against him with the potential harm to child victims forced to testify before the perpetrator. The trial court noted that Broude claimed to be deprived of plea bargain opportunities and granted an extension on his plea bargain deadline to permit further negotiations with the State. The trial court also observed that given the length of the continuance to be granted, Broude had more than the ten-day notice required by the statute. The trial court concluded that given A.M.'s demeanor and Dr. Martin's testimony, it was more likely than not that A.M. would suffer emotional or mental harm if she were made to testify in Broude's physical presence. The trial court granted the State's motion and continued Broude's trial until December 1, 2010.

When Broude's trial resumed on December 1, 2010, the trial court explained that A.M. would testify by closed-circuit television and admonished the jury that A.M.'s testimony should be considered as if she were testifying in open court. A.M. testified regarding the offenses. More particularly, A.M. stated that she did not like it

when Broude began "kissing [her] all over." Tr. p. 132. Also, A.M. placed an "X" on a picture diagram of a girl representing where Broude had touched her. A.M. testified that Broude touched the upper and lower part of her body where she had placed "Xs" with his hands and mouth. *Id.* at 135–36, 166.

T.M. testified, without objection, that she had found a pair of tweezers covered in feces in A.M.'s bathtub and that when she asked A.M. about it, A.M. replied that she placed objects in her rectum and that "[Broude] would do that and she just wanted to do it. She never really gave a reason why. She just would say he did these things." Tr. p. 183.

Starke County Sheriff's Department Chief Deputy Bill Dulin testified, without objection, that he had witnessed A.M.'s forensic interview and that A.M. had reported that "[Broude] had put his pee pee in her mouth and pushed it in, into her mouth, and she saw juice coming out of it." Tr. p. 211.

On December 1, 2010, the jury found Broude guilty as charged. On December 28, 2010, the trial court held a sentencing hearing where it sentenced Broude to fifty years on each class A felony and to eight years on the class C felony, to be served concurrently, for a total executed term of fifty years imprisonment. Broude now appeals.

## DISCUSSION AND DECISION

### I.  Protected Person Statute

■ Broude argues that the trial court erred by allowing A.M. to testify by closed-circuit television because the State failed to give notice ten days before the beginning of Broude's trial. Generally, "[t]he admission of evidence is within the sound discretion of the trial court, and the decision whether to admit evidence will not be reversed absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial." *Guy v. State*, 755 N.E.2d 248, 252 (Ind.Ct.App. 2001).

Indiana Code section 35–37–4–8, the Protected Person Statute, permits the alleged victim of a sex crime to testify using a two-way closed circuit television if certain requirements are satisfied. One requirement in Subsection (e)(3) provides that "the prosecuting attorney inform[ ] the defendant and the defendant's attorney under subdivision (2) at least ten (10) days before the trial of the prosecuting attorney's intention to have the protected person testify outside the courtroom."

Broude argues that the State did not provide notice that it intended to have A.M. testify outside the courtroom until the second day of trial after A.M. had already provided testimony in open court the first day. Broude points out that the Protected Person Statute is very clear regarding the notice requirement.

The State counters that the statute does not explicitly state that the notice must be given before the first day of trial and points out that "[m]ost trials are a process in which several witnesses are called." Appellee's Br. p. 9. The State maintains that the statute merely requires that a ten-day notice be given before the protected person is to testify outside the courtroom. Moreover, because the State gave a fourteen-day notice in the present case, the trial court properly allowed A.M. to testify outside the courtroom.

Here, Broude has failed to show how he was prejudiced by the State's failure to give a ten-day notice before the beginning of his trial. More particularly, at trial Broude claimed that he was potentially prejudiced because had he known that A.M. was going to be permitted to testify

outside the courtroom, he might have accepted a plea agreement. Tr. p. 102. The trial court remedied this by allowing Broude and the State to engage in further plea negotiations. Tr. p. 110.

Moreover, the trial court granted a fourteen-day continuance, giving Broude four additional days than what is required under the notice provision of the statute to prepare for A.M.'s testimony. Consequently, we cannot conclude that the trial court abused its discretion under these circumstances, and this claim fails.

## II. Sufficient Evidence

■ Broude asserts that the State failed to present sufficient evidence to sustain his convictions for two counts of class A felony child molesting. Specifically, Broude contends that on Count II, there was insufficient evidence that he forced A.M. to perform oral sex on him.

In reviewing a challenge to the sufficiency of the evidence, this Court neither reweighs the evidence nor judges the credibility of the witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind.2005). Instead, this Court considers only the evidence favorable to the verdict and all reasonable inferences therefrom. *Id.* We will affirm the conviction unless "no rational fact-finder" could have found the defendant guilty beyond a reasonable doubt. *Clark v. State*, 728 N.E.2d 880, 887 (Ind.Ct.App. 2000).

In Count II, the State charged Broude with class A felony child molesting by submitting to criminal deviate conduct. More particularly, the charging information stated:

[O]n or between September 1, 2008 and December 31, 2008, GERALD BROUDE being at least 21 years of age, to wit: 34 years of age, did knowingly or intentionally submit to criminal deviate conduct by [A.M.], a child under 14

years of age, to-wit: Gerald Broude forced [A.M.] to perform oral sex on the Defendant....

Appellant's App. p. 10.

In this case, Chief Deputy Bill Dulin testified, without objection, that he had witnessed A.M.'s forensic interview and that A.M. had reported that "[Broude] had put his pee pee in her mouth and pushed it in, into her mouth and she saw juice coming out of it." Tr. p. 211. Because there was no hearsay objection, it was substantive evidence from which the jury could reasonably conclude that Broude had forced A.M. to perform oral sex on him. *See Banks v. State*, 567 N.E.2d 1126, 1129 (Ind.1991) (holding that "[o]therwise inadmissible hearsay evidence may be considered for substantive purposes and is sufficient to establish a material fact at issue when the hearsay evidence is admitted without a timely objection at trial"). Accordingly, through Chief Deputy Dulin's testimony, the State presented sufficient evidence that Broude committed class A felony child molesting as alleged in Count II.

## III. Material Variance

■ Here, neither party disputes that there was a variance between the charging information and the proof at trial. More particularly, in Count III, the State charged Broude with class A felony child molesting by submitting to criminal deviate conduct; the specific act alleged was "Gerald Broude forced [A.M.] to place her finger in his anus...." Appellant's App. p. 11. However, the State presented T.M.'s testimony that upon finding a pair of feces-covered tweezers in A.M.'s bathtub, A.M. explained that she was placing objects in her rectum because Broude had done it. Tr. p. 183.

A variance does not necessarily require reversal. *Mitchem v. State*, 685 N.E.2d

671, 677 (Ind.1997). The test to determine whether a variance is fatal is:

(1) was the defendant misled by the variance in the evidence from the allegations and specifications in the charge in the preparation and maintenance of his defense, and was he harmed or prejudiced thereby;

(2) will the defendant be protected in [a] future criminal proceeding covering the same event, facts, and evidence against double jeopardy?

*Allen v. State,* 720 N.E.2d 707, 713 (Ind. 1999). Put another way, if the variance either misleads the defendant in the preparation of his defense resulting in prejudice or leaves the defendant vulnerable to double jeopardy in a future criminal proceeding covering the same event and evidence, then the variance is fatal. *Winn v. State,* 748 N.E.2d 352 (Ind.2001).

Here, Broude's defense was that nothing that could even remotely be construed as sexual touching had occurred between him and A.M. Tr. p. 227–28, 239–41, 243–44. This defense would have been the same no matter what the factual nature of the child molesting allegations had been. Thus, the variance in the charging information does not necessitate reversal under the first prong.

As for the second prong, the instant case is sufficiently analogous to *Allen* to be instructive. In *Allen,* the State charged Allen with criminal deviate conduct involving his sex organ. 720 N.E.2d at 713. During Allen's trial, the State failed to elicit testimony that Allen's sex organ was the cause of the extensive injury to the victim's anus, and the State's physician testified that the injury was caused by a forcible sexual assault by "a blunt object." *Id.* Our Supreme Court determined that because the State limited the charge to a sex organ rather than an object, Allen could be tried again on the same facts and evidence. *Id.*

Here, the State charged Broude with class A felony child molesting by forcing A.M. to place her finger in his anus. The State concedes that it presented no evidence at trial to support this allegation, but rather presented evidence that Broude performed sexual deviate conduct on A.M. by placing at least one object in her rectum. This variance is even more significant than that in *Allen.* Accordingly, Broude could be recharged and tried again on the same facts and evidence. Consequently, Broude's conviction on Count III must be reversed.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions that the trial court vacate Broude's conviction on Count III.

KIRSCH, J., and BROWN, J., concur.