Pursuant to Ind.Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



FILED

Apr 20 2012, 9:46 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK A. BATES**
Lake County Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANDRE M. PERRY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A05-1108-CR-397 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Thomas P. Stefaniak, Jr., Judge
Cause No. 45G04-1005-FA-25

**April 20, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Andre M. Perry appeals his convictions for felony Murder,[1] class A felony Attempted Murder,[2] and class D felony Residential Entry.[3] Perry presents the following restated issues for review:

1.      Did the trial court deprive Perry of his confrontation rights?

2.      Did the trial court abuse its discretion by admitting a photograph of the neck injuries of the attempted murder victim?

3.      Did the State present sufficient evidence to sustain the attempted murder conviction?

4.      Did the State commit prosecutorial misconduct?

5.      Did the trial court abuse its discretion when imposing consecutive sentences for murder and attempted murder?

We affirm.

The facts favorable to the conviction follow. In April 2010, Cathy Vlamos and her boyfriend, Maurice Downs, lived in a townhome in Gary, Indiana. Downs was a local mechanic. On the evening of April 10, Downs wrecked Perry's vehicle near the townhome. Downs attempted to find a tow truck to take it to the shop where he worked.

Around midnight, Perry began pounding on Vlamos and Downs's door. He had been told about the wreck and was angry. Downs walked Perry down an alley to the vehicle to show him the damage. Vlamos continued to hear arguing, so she called the police. The officers had left by the time Perry and Downs returned. Perry was still angry about the situation and refused to leave the townhome. Downs called the police around 2:00 a.m. The

---

[1]   Ind. Code Ann. § 35-42-1-1 (West, Westlaw through 2011 1st Regular Sess.).
[2]   *Id.*; Ind. Code Ann. § 35-41-5-1 (West, Westlaw through 2011 1st Regular Sess.).
[3]   Ind. Code Ann. § 35-43-2-1.5 (West, Westlaw through 2011 1st Regular Sess.).

same officer, Gregory Wolf of the Gary Police Department, responded. Perry expressed his displeasure about the wrecked vehicle to Officer Wolf and repeatedly indicated that he wanted it fixed. Downs remained timid during the encounter, and Perry left without incident shortly after the officer arrived.

On the evening of April 13, Downs had returned home and was about to have dinner with Vlamos when he heard an alarm go off outside. Shortly after going out the back door, Downs told Vlamos to call the police. While outside, Downs was stabbed three times (once in the face and twice in the chest) by Perry and cut once on the neck.

While Vlamos was on the 911 call, Perry came through her back door. He cut the telephone cord and approached Vlamos. She backed into the living room and considered running out the front door, but then two young men entered. One of the men went upstairs, and the other stayed with Vlamos and Perry.

Vlamos retreated to the couch, where Perry pinned her with his knee. Vlamos pleaded with Perry, "Please don't hurt me, I got kids and grandkids. I had nothing to do with the car, please don't hurt me". *Transcript* at 252. Perry looked at her without saying anything and then stabbed her three times in the neck and once in her side. At that time, the man that had gone upstairs returned and warned that Vlamos had called the police. The three men then fled.

When police arrived, they found Downs dead on the lawn and Vlamos covered with blood from her "severe stab wounds". *Id.* at 474. The stab wound to Vlamos's side penetrated her pleural cavity and caused her to suffer a collapsed lung. With respect to her neck injuries, Vlamos was fortunate that the knife "just avoided" the carotid artery, which

3

would have killed her quickly. *Id*. at 710. She was hospitalized for a month.

Vlamos only knew Perry as "Dre", but as the result of a tip, Perry became a person of interest on April 16. Thereafter, Gary City Police Detective Jeff Hornyak presented a photo lineup to Vlamos at the hospital on April 18, and she immediately identified Perry as her attacker. At trial, Officer Wolf identified Perry as the man who was at Vlamos's home on April 11, complaining about his damaged car.

On May 6, 2010, the State charged Perry with attempted murder, aggravated battery, two counts of battery, and residential entry. The charging information was later amended to add the count of murder. A jury found Perry guilty as charged. On March 8, 2011, the trial court entered judgments of conviction for murder, attempted murder, and residential entry and sentenced Perry to an aggregate sentence of sixty-five years in prison. The sentences for murder (forty-five years) and attempted murder (twenty years) were ordered to be served consecutively, while the sentence for residential entry was ordered concurrent with the murder sentence. Thereafter, Perry filed a motion for a new trial, which the trial court denied following a hearing on August 4, 2011. Perry now appeals. Additional facts will be presented below as necessary.

## 1.

Perry initially argues that his confrontation rights under both the state and federal constitution were violated during the testimony of Detective Hornyak. Ind. Const. art. 1, § 13; U.S. Const. Amend. VI. He challenges the following testimony:

[State]: On April 16, did you receive any names of who Dre may be?

[Witness]: Yes. I was contacted by Detective Bond…

4

****

[State]:        As a result of that, what name did you receive?

[Witness]:    Andre Perry.

*Transcript* at 478, 482.  On appeal, Perry complains that he was denied the right to confront

the source of the information (that is, Detective Bond and/or the anonymous informant that

provided the information to Detective Bond) that caused Perry to become a target of the

investigation.

We initially observe that Perry did not object to Detective Hornyak's testimony based

on the Sixth Amendment or article 1, § 13.  Instead, his contemporaneous objection was

based solely on hearsay.  "A party may not object to the admission of evidence on one

ground at trial and seek reversal on appeal based on a different ground." *Boatner v. State*,

934 N.E.2d 184, 187 (Ind. Ct. App. 2010).  Perry's confrontation claims are therefore

waived.

Regardless, even if Perry properly preserved the issue for appeal, he would not

prevail.  It is clear that the challenged testimony was provided by the State merely to show

the course of the investigation and how Detective Hornyak's attention was first drawn to

Perry.  As a result of this information, Detective Hornyak included Perry's picture in a

photographic array and showed it to Vlamos, who in turn identified Perry as her attacker.  In

short, the challenged testimony did not amount to hearsay because the statement was not

offered by the State to prove the truth of the matter asserted.  *See Angleton v. State*, 686

N.E.2d 803, 809 (Ind. 1997) ("[s]tatements not admitted to prove the truth of the matter do

not run afoul of the hearsay rule – they are not hearsay").

"[T]he Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" *Williams v. State*, 930 N.E.2d 602, 607 (Ind. Ct. App. 2010) (quoting *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004)), *trans. denied*. Therefore, if a statement is not hearsay, as in the instant case, the defendant's confrontation rights will not bar the statement's admissibility at trial. *Williams v. State*, 930 N.E.2d 602. The trial court did not err in allowing the challenged testimony.

2.

Perry contends that the trial court abused its discretion when it admitted, over his objection, a photograph of the knife wounds to Vlamos's neck. Specifically, he contends that bloody bandages shown in the picture made it especially gruesome. Because Vlamos described her wounds to the jury and showed her scars, Perry argues that there was no reason to show the photograph.

The admission of evidence is within the sound discretion of the trial court, and we will not reverse without a showing of manifest abuse of discretion resulting in the denial of a fair trial. *See Broude v. State*, 956 N.E.2d 130 (Ind. Ct. App. 2011), *trans. denied*. "Photographs that depict a victim's injuries are generally relevant and admissible." *Stewart v. State*, 945 N.E.2d 1277, 1289 (Ind. Ct. App. 2011), *trans. denied*. As with all relevant evidence, however, photographs may be excluded if their probative value is substantially outweighed by the danger of unfair prejudice. *Helsley v. State*, 809 N.E.2d 292 (Ind. 2004) (citing Ind. Evidence Rule 403). To obtain a reversal, an appellant must establish that the probative value of the photograph was outweighed by the unfair prejudice flowing from it. *Id.*

Here, the trial court determined that the photograph was not unduly gruesome, noting as follows: "The blood is not necessarily pleasant to look at, but the actual wound itself causes me to look away before the actual blood itself." *Transcript* at 712. We agree. The photograph accurately depicts the stab wounds to Vlamos's neck shortly after she sustained the injuries. Further, the blood-stained dressing, which had apparently been removed from the wounds for the picture, tends to show the severity of the wound and is not unduly prejudicial.[4] Perry has failed to establish reversible error.

3.

Perry contends that the State failed to present sufficient evidence to convict him of attempted murder. In this regard, he asserts that after the attack Vlamos seemed more interested in finding her purse than receiving medical aid and that her "cuts were stitched under a local anesthetic." *Appellant's Brief* at 7. Moreover, Perry notes that he never threatened to kill Vlamos.

> Our standard of review for challenges to the sufficiency of the evidence is well settled.
>
> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Henley v. State,* 881 N.E.2d 639, 652 (Ind. 2008). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

*Bailey v. State,* 907 N.E.2d 1003, 1005 (Ind. 2009).

To establish attempted murder, the State was required to prove beyond a reasonable

---

[4] The severity of the wounds was at issue in the instant case. Even on appeal, Perry attempts to downplay the nature of Vlamos's injuries to her neck. *See Appellant's Brief* at 16 ("[i]t appears that only one wound to

7

doubt that Perry took a substantial step toward committing murder while acting with the specific intent to kill Vlamos. *See* I.C. § 35-41-5-1; I.C. § 35-42-1-1. *See also James v. State*, 953 N.E.2d 1191 (Ind. Ct. App. 2011). Intent to kill may be inferred from the nature of the attack and the circumstances surrounding the crime, including from the deliberate use of a deadly weapon in a manner likely to cause death or great bodily harm. *See Bethel v. State*, 730 N.E.2d 1242 (Ind. 2000).

Here, Perry fatally stabbed Downs in the chest, and also stabbed or cut him about the face and neck. Perry then proceeded to the house, where without speaking to Vlamos, he pinned her against the couch and stabbed her three times in the neck and then once in the chest. Police responded and found Vlamos covered in blood. As a result of the attack, Vlamos suffered a collapsed lung and stayed in the hospital for a month. While the injuries to her neck were not as serious as the one to her chest, Vlamos's surgeon testified that Vlamos was fortunate that the knife "just avoided" the carotid artery, which would have killed her quickly. *Transcript* at 710. In light of this evidence, there is absolutely no merit to Perry's sufficiency claim.

4.

Perry argues that the State committed prosecutorial misconduct by insinuating during cross-examination of Perry that Perry was a drug dealer who killed Downs because Downs stole drugs from him and then wrecked his car. He claims the prosecutor engaged in this line of questioning without any supporting evidence. Further, Perry complains that the prosecutor improperly argued during closing argument that Perry would do anything, legal or illegal, to

the neck was an actual stab, the others were small and there was *no active bleeding*") (emphasis supplied).

8

support his family.

If a defendant properly raises and preserves the issue of prosecutorial misconduct, we will review the issue by determining (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. *Coleman v. State,* 946 N.E.2d 1160 (Ind. 2011). Where a claim of prosecutorial misconduct has not been properly preserved, the appellant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. *Id.* Fundamental error is an "extremely narrow exception" that is found only where the error makes a fair trial impossible or constitutes clearly blatant violations of basic elementary principles of due process presenting an undeniable and substantial potential for harm. *Id.* at 1166-67.

In the instant case, Perry did not preserve any claim of prosecutorial misconduct. Specifically, Perry did not object to the State's line of questioning during the cross-examination of Perry[5] and did not assert a specific objection based upon prosecutorial misconduct during the State's closing. Moreover, Perry did not request an admonishment or

[5] Defense counsel expressly indicated, "my client doesn't want me to object, I am not going to object." *Transcript* at 910.

move for a mistrial. *See Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006) (when an improper argument is alleged to have been made, "[f]ailure to request an admonishment or to move for a mistrial results in waiver").

In an attempt to avoid waiver, Perry appends to the end of his appellate argument on this issue a bald assertion that the alleged misconduct constituted fundamental error. An assertion that the error was fundamental does not make it so. Perry has wholly failed to establish the additional grounds for fundamental error.

5.

Finally, Perry challenges the trial court's decision to impose consecutive sentences. He claims the trial court abused its discretion because it found no aggravating factors, only mitigating, when imposing the sentence.

The decision to impose consecutive sentences lies within the discretion of the trial court. *Owens v. State*, 916 N.E.2d 913 (Ind. Ct. App. 2009). In order to impose consecutive sentences, however, the court must find at least one valid aggravating factor. *Id*.

Perry correctly observes that that the trial court did not find any aggravating factors when imposing the sentencing term for each conviction. With respect to the consecutive nature of the murder and attempted murder sentences, on the other hand, the trial court explained this was ordered "because of the fact that these are separate victims and separate victims are entitled under these circumstances to punishment for each crime." *Transcript* at 1098. This is entirely accurate. *See Pittman v. State*, 885 N.E.2d 1246, 1259 (Ind. 2008) ("[c]onsecutive sentences reflect the significance of multiple victims"); *McCann v. State*, 749 N.E.2d 1116, 1120 (Ind. 2001) ("[i]njury to multiple victims has been cited several times by

10

this Court as supporting … consecutive sentences").  The trial court properly found that separate attacks on each victim justified consecutive sentences.

Judgment affirmed.

MAY, J., and BARNES, J., concur.