**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| COREY COLEMAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1307-CR-594 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gary L. Miller, Judge
Cause No. 49G21-1305-CM-34861

**April 4, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Corey Coleman appeals his conviction for Class A misdemeanor invasion of privacy, arguing that there is a variance between the charging information and the proof at trial. Although there is a variance, we find that the variance is not fatal because Coleman was not misled in his defense and did not suffer prejudice as a result of the variance. We therefore affirm.

**Facts and Procedural History**

The facts most favorable to the judgment follow. Coleman and Erica Motley are the parents of D.M. Coleman was convicted of residential entry and placed on probation. As a condition of his probation, the trial court issued a no-contact order prohibiting him from having direct or indirect contact with Motley and D.M.[1] State's Ex. 1.

Both Coleman and Motley appeared for a hearing in Marion Superior Court 17 on May 28, 2013. Motley brought her friend, Micah Caldwell, to watch D.M. while she attended the hearing. Motley, D.M, and Caldwell were in the waiting room of Court 17 when Coleman walked in and did a "double-take." Tr. p. 8. Motley was holding D.M. at the time. Coleman walked up and "tapped [D.M.] on her arm." *Id.* at 9. Motley told Coleman no, because he was not allowed to touch D.M. Coleman looked at Motley and walked away.

Motley immediately handed D.M. to Caldwell and went downstairs in the City-County Building to the Marion County Sheriff's Office. Motley told Deputy Corey Thtiggs

---

[1] The no-contact order provided that Coleman was to have no contact with Motley and D.M. "in person, by telephone or letter, through an intermediary, or in any other way, directly or indirectly, except through an attorney of record, while on probation. This includes, but is not limited to, acts of harassment, stalking, intimidation, threats, and physical force of any kind." Ex. 1.

that Coleman had touched D.M.'s arm in violation of a no-contact order. Deputy Thtiggs went to Court 17 to speak with Coleman. After asking Coleman some preliminary questions, Coleman said, "I didn't touch her." *Id.* at 21. Deputy Thtiggs responded that he had not said anything about a touching. Deputy Thtiggs handcuffed Coleman and took him downstairs, where he verified that the no-contact order was active.

Deputy Thtiggs prepared a probable-cause affidavit, which provided that Coleman walked up to Caldwell, who was holding D.M. at the time, and touched Caldwell's arm in an attempt to touch D.M. Appellant's App. p. 12. The State then charged Coleman with Class A misdemeanor invasion of privacy. The State alleged that Coleman knowingly violated a no-contact order issued as a condition of pretrial release—as opposed to probation. *Id.* at 13. The State also alleged that Coleman "attempted to touch [D.M.] and/or was in the presence of [D.M.]." *Id.*

A bench trial was held. Before the State called its first witness, the State moved to amend the charging information by interlineation to read that Coleman violated the no-contact order issued as a condition of probation instead of as a condition of pretrial release. Tr. p. 3. The trial court granted the State's motion over Coleman's objection. Both Motley and Caldwell testified that Coleman touched D.M. as Motley was holding her. Deputy Thtiggs testified that based on his conversation with Motley on May 28, Coleman touched Caldwell's arm in an attempt to touch D.M. Motley, however, denied making this statement to Deputy Thtiggs. Coleman testified in his defense that when he walked in Court 17's waiting room, D.M. gestured toward him, like she wanted him to pick her up. Although he thought about it, Coleman said he did not pick D.M. up or touch her because

3

of the no-contact order. Rather, he proceeded to the courtroom. *Id.* at 33. The trial court found Coleman guilty, not for being in the presence of D.M., but rather because "we're dealing with more here, an allegation of touching." *Id.* at 43.

Coleman now appeals his conviction.

**Discussion and Decision**

Coleman contends that there was a variance between the charging information and the proof at trial. A charging information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be sufficiently specific to apprise the defendant of the charged crime and to enable him to prepare a defense. *Parahams v. State*, 908 N.E.2d 689, 691-92 (Ind. Ct. App. 2009). A variance is an essential difference between the pleading and the proof. *Mitchem v. State*, 685 N.E.2d 671, 677 (Ind. 1997). A variance between the charging information and the proof at trial does not necessarily require reversal. *Gaines v. State*, 999 N.E.2d 999, 1002 (Ind. Ct. App. 2013). The test to determine whether a variance is fatal is:

> (1) was the defendant misled by the variance in the evidence from the allegations and specifications in the charge in the preparation and maintenance of his defense, and was he harmed or prejudiced thereby;
>
> (2) will the defendant be protected in [a] future criminal proceeding covering the same event, facts, and evidence against double jeopardy?

*Id.* "Put another way, if the variance either misleads the defendant in the preparation of his defense resulting in prejudice or leaves the defendant vulnerable to double jeopardy in a future criminal proceeding covering the same event and evidence, then the variance is fatal." *Id.* (quotation omitted).

The variance in this case is that the State charged Coleman with invasion of privacy for attempting to touch D.M.[2] However, at trial, the State proved more than that—it presented evidence that an actual touching occurred. Both Motley and Caldwell testified that Coleman touched D.M. while Motley held her. Nevertheless, Coleman does not demonstrate how he was misled in his defense or suffered prejudice as a result of this variance. Coleman's defense was that he did not touch D.M. or even try to. His defense was the same regardless of whether the State's theory was that Coleman touched D.M. or tried to touch D.M.[3] If the trial court would have found Coleman's testimony credible—that he thought about touching his daughter but walked into the courtroom instead—his defense would have worked for either the attempt or the completed crime. *See Broude v.*

---

[2] The State also alleged that Coleman violated the no-contact order because he was in the presence of D.M., but the trial court rejected this ground. *See* Tr. p. 43 ("I think that in the event that we were here and it was just a matter of being in the presence of[,] then I would have no problem finding a defendant not guilty . . . ."). Therefore, we do not rely on this ground either.

To the extent Coleman argues that *Thomas v. State*, 936 N.E.2d 339 (Ind. Ct. App. 2010), *trans. denied*, controls this case, we find that it is readily distinguishable. In *Thomas*, the parties were in court before the judge when the defendant made a derogatory comment to the victim that was arguably in violation of a protective order. This Court held that the conduct was more appropriately addressed by direct contempt proceedings than an invasion-of-privacy charge because some terms of protective orders need to be suspended when parties appear in court for hearings. *Id.* at 340-41. Here, however, the parties were not in court before the judge when the events occurred.

[3] Coleman cites *Huber v. State*, 805 N.E.2d 887 (Ind. Ct. App. 2004), for the proposition that attempting to contact or touch someone who is the subject of a protective order is not invasion of privacy. We do not read *Huber* so broadly. In *Huber*, a husband asked a domestic-violence advocate to contact his wife on his behalf. The wife, however, had obtained three protective orders against him. The advocate refused to contact the wife on the husband's behalf. This Court reversed the husband's invasion-of-privacy conviction, reasoning:

> [T]he State failed to carry its burden on the material element of [the husband] violating a Protective Order by contacting [the wife], either directly or indirectly. [The advocate] specifically told [the husband] that she could not convey the message; therefore, [the husband's] attempt to contact [the wife] indirectly through [the advocate] was incomplete.

*Id.* at 892. The facts here are much different, as Coleman was in the presence of his daughter in a waiting room outside a courtroom.

5

*State*, 956 N.E.2d 130, 136 (Ind. Ct. App. 2011) ("Here, Broude's defense was that nothing that could even remotely be construed as sexual touching had occurred between him and A.M. This defense would have been the same no matter what the factual nature of the child molesting allegations had been. Thus, the variance in the charging information does not necessitate reversal under the first prong." (citation omitted)), *trans. denied*.

Moreover, Coleman is adequately protected against double jeopardy in a future criminal proceeding covering the same event, acts, and evidence. The charging information references a particular day—May 28, 2013—when Coleman was on probation. The parties all testified about a specific incident that occurred in Court 17's waiting room when they appeared for a hearing. Double-jeopardy principles therefore preclude another trial and conviction based on the same evidence presented in Coleman's first trial. We therefore affirm Coleman's conviction for Class A misdemeanor invasion of privacy.

Affirmed.

MAY, J., concurs.

RILEY, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

COREY COLEMAN,                       )
)
    Appellant-Defendant,        )
)
          vs.                      )     No. 49A02-1307-CR-594
)
STATE OF INDIANA,             )
)
    Appellee-Plaintiff.          )

**RILEY, Judge, dissenting**

I respectfully dissent from the majority's decision to affirm Coleman's conviction for Class A misdemeanor invasion of privacy. The State charged Coleman with invasion of privacy by violating a no-contact order when he "attempted to touch D.M. and/or was in the presence of D.M." (Appellant's App. p. 13). At trial, the State presented evidence of an actual touching. At the close of the evidence, the trial court remarked that because Coleman was required to wait in the waiting room, he could not be prosecuted for "being in the presence of D.M." (Transcript p. 43). Accordingly, in order to convict Coleman of

7

invasion of privacy, the State was required to establish that Coleman "attempted to touch" his child. (Appellant's App. p. 13).

An attempted offense is an inherently included offense of the completed crime. I.C. § 35-31.5-2-168(2). For an attempt to occur, the defendant must act with the culpability required for the commission of the crime and engage in conduct that constitutes a substantial step toward the commission of the crime. I.C. § 35-41-5-1(a). When determining whether the defendant has taken a substantial step toward a crime, the focus is on what has been completed, not on what remains to be done. *Hughes v. State*, 600 N.E.2d 130, 132 (Ind. Ct. App. 1992).

In *Huber v. State*, 805 N.E.2d 887, 889 (Ind. Ct. App. 2004), Huber requested a domestic violence advocate to contact his wife on his behalf. Because Huber's wife had three protective orders against him, the advocate refused to contact her. *Id*. This court reversed Huber's conviction for invasion of privacy, holding that

> [t]he State failed to carry its burden on the material element of Huber
>
> violating a Protective Order by *contacting* [his wife], *either directly or*
>
> *indirectly*. [The advocate] specifically told Huber that she could not convey
>
> the message; therefore, *Huber's attempt to contact [his wife] indirectly*
>
> *through [the advocate] was incomplete*. Accordingly, we must reverse
>
> Huber's conviction for invasion of privacy[.]

*Id*. at 892 (emphasis added). Consequently, if an attempt needs to be complete in order to convict, *a fortiori* no attempt exists but rather only the completed crime of invasion of privacy remains. As such, we agree with Coleman that a defendant must either violate a

8

protective order or not.  Thus charging Coleman with an 'attempted' touching cannot result in a conviction of the completed crime of invasion of privacy.  I would reverse Coleman's conviction.