**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 20 2014, 6:31 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**P. STEPHEN MILLER**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HARRY WHITE, II, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1312-CR-498 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee/Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D04-1306-FA-26

**June 20, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

Appellant-Defendant Harry White, II was involved in a six or seven-year romantic relationship with Carla Cordill. At some point during June of 2013, Cordill attempted to end the romantic relationship. Soon thereafter, on June 21, 2013, White entered Cordill's residence, went into Cordill's bedroom, and waited for Cordill to return. When Cordill entered the bedroom, White and Cordill began to fight. White then began stabbing Cordill with a steak knife that White had taken from a knife set in Cordill's kitchen. White stabbed Cordill numerous times before Cordill was able to get the knife away from White. While still wielding the knife, White threatened to kill Cordill. After losing control of the knife, White placed his hands around Cordill's neck and began choking Cordill. Cordill eventually escaped. Once outside, Cordill saw White drive away from her residence in a vehicle that was titled to Cordill's father and driven by Cordill. Neither Cordill nor her father had given White permission to drive the vehicle.

On June 27, 2013, Appellee-Plaintiff the State of Indiana (the "State") charged White with attempted murder, Class C felony intimidation, Class D felony strangulation, Class D felony auto theft, and Class A misdemeanor interference with the reporting of a crime. Following a two-day trial, the jury found White guilty as charged. The trial court subsequently imposed an aggregate forty-three-year sentence. On appeal, White contends that (1) the evidence is insufficient to sustain his intimidation conviction; (2) his convictions for attempted murder, intimidation, and strangulation violate the prohibitions against double jeopardy; (3) the charging information relating to the auto theft charge contains a fatal

2

variance; and (4) his aggregate forty-three-year sentence is inappropriate. We affirm.

## FACTS AND PROCEDURAL HISTORY

As of June of 2013, White and Cordill had been involved in a six or seven-year romantic relationship. At some point during the week leading up to June 21, 2013, Cordill attempted to end the romantic relationship. Cordill spent the night of June 20, 2013, at her sister's home taking care of her sister, who was ill. Cordill returned to her residence at approximately 10:00 a.m. on June 21, 2013.

At some point before Cordill returned home on June 21, 2013, White entered Cordill's residence, went into Cordill's bedroom, and waited for Cordill to return. When Cordill entered her bedroom, Cordill heard a noise and turned to find White standing in the bedroom. White and Cordill began to fight. White then began stabbing Cordill with a steak knife that White had taken from a knife set in Cordill's kitchen. White stabbed Cordill numerous times, including in the wrist, inner and outer thigh, upper arm, stomach, and breasts. Cordill's fingers and wrist were also cut when she attempted to protect herself and take the knife away from White. While still wielding the knife, White threatened to kill Cordill, saying that "if I can't have you nobody will." Tr. p. 140. Eventually, Cordill was able to get the knife away from White.

Cordill and White began to wrestle after Cordill took the knife away from White. White then placed his hands around Cordill's neck, pushed her down, and began choking her. While choking her, White said, "I'm going to prison [b****], I'll see you in hell" and "Die [b****]." Tr. pp. 142, 144. Cordill was unable to breathe and was gasping for air. Cordill

3

tore a ligament in her hand when she attempted to defend herself by trying to put her thumbs under White's fingers. Unable to stop White from choking her, Cordill eventually passed out. After Cordill regained consciousness, she ran out of her residence. Cordill ran toward her mailbox to seek assistance. White did not follow her outside.

Once outside, Cordill encountered Teresa Teders who saw that Cordill's face was red from blood. Teders observed that Cordill appeared disoriented; did not walk straight; yelled, "help me, help me;" and kept saying that "he stabbed [me]." Tr. pp. 122, 126. Cordill's shirt was completely soaked, and her arm had a puncture wound that "was really deep." Tr. p. 124. Teders also noticed other puncture marks on Cordill's body.

While outside with Teders, Cordill saw White drive away from her residence in her vehicle. At all times relevant to the instant appeal, Cordill drove a 2013 Toyota Corolla that was registered to her father, Charles Cordill. Cordill's father permitted Cordill to drive the vehicle, and Cordill made the loan payments on the vehicle. Cordill had left the keys to the vehicle hanging on a wall inside her residence. Neither Cordill nor her father had given White permission to drive the vehicle.

Fort Wayne police offers subsequently recovered the vehicle from White. White was placed under arrest. White had dried blood on his clothing and shoes at the time of his arrest.

On June 27, 2013, the State charged White with attempted murder, Class C felony intimidation, Class D felony strangulation, Class D felony auto theft, and Class A misdemeanor interference with the reporting of a crime. The trial court conducted a two-day jury trial on October 22-23, 2013. Following the conclusion of trial, the jury found White

4

guilty as charged. The trial court conducted a sentencing hearing on November 22, 2013, after which it sentenced White to an aggregate term of forty-three years of imprisonment. This appeal follows.

## DISCUSSION AND DECISION

### I. Whether the Evidence Is Sufficient to Sustain White's Conviction for Class C Felony Intimidation

White contends that the evidence is insufficient to sustain his conviction for Class C felony intimidation.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict could be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

Indiana Code section 35-45-2-1 provides as follows:

5

(a) A person who communicates a threat to another person, with the intent:

    (1) that the other person engage in conduct against the other person's will;

    (2) that the other person be placed in fear of retaliation for a prior lawful act; or

    (3) of:

        (A) causing:

            (i) a dwelling, building, or other structure; or

            (ii) a vehicle;

        to be evacuated; or

        (B) interfering with the occupancy of:

            (i) a dwelling, building, or other structure; or

            (ii) a vehicle;

commits intimidation, a Class A misdemeanor.

(b) However, the offense is a:

                ****

    (2) Class C felony if:

        (A) while committing it, the person draws or uses a deadly weapon.

The term "threat" means "an expression, by words or action, of an intention to: (1) unlawfully injure the person threatened or another person, or damage property; (2) unlawfully subject a person to physical confinement or restraint; [or] (3) commit a crime…." Ind. Code § 35-45-2-1(d).

On appeal, White claims that his actions did not constitute a threat and that the State failed to prove that his actions were in retaliation for a prior lawful act, *i.e.*, Cordill attempting to end their romantic relationship. We disagree. During trial, the State presented evidence that White waited in Cordill's bedroom before attacking her with a knife. While still wielding the knife, White told Cordill that if "I can't have you nobody will." Tr. p. 140. It was reasonable for the jury to infer from this statement that White threatened Cordill by

6

expressing the intention to injure or kill Cordill in retaliation for Cordill's expressed desire to end their romantic relationship. As such, we conclude that the evidence is sufficient to sustain White's conviction for Class C felony intimidation. White's claim to the contrary is merely an invitation to this court to reweigh the evidence, which we will not do. *See Stewart*, 768 N.E.2d at 435.

## II. Whether White's Convictions Are Barred by the Prohibitions Against Double Jeopardy or the Continuing Crime Doctrine

White next contends that his convictions for attempted murder, Class C felony intimidation, and Class D felony strangulation are barred by either the prohibitions against double jeopardy or the continuing crime doctrine. Initially, we note that White does not appear to fully develop this contention. However, we will examine White's contention to the extent possible.

### A. Prohibitions Against Double Jeopardy

White claims that his convictions for attempted murder, Class C felony intimidation, and Class D felony strangulation are barred by the prohibitions against double jeopardy because the offenses were "the same crimes." Appellant's Br. p. 9.

> The Indiana Double Jeopardy Clause provides, "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. I, § 14. We analyze alleged violations of this clause pursuant to our Supreme Court's opinion in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999). In *Richardson*, our Supreme Court held that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." 717 N.E.2d 32, 49 (Ind. 1999) (emphasis in original).

7

*Bunch v. State*, 937 N.E.2d 839, 845 (Ind. Ct. App. 2010).

### 1. Statutory Elements

Two or more offenses are the same offense in violation of Article I, Section 14 of the Indiana Constitution if the essential statutory elements of one of the challenged offenses also establishes the essential statutory elements of another challenged offense. *See id.* (citing *Richardson*, 717 N.E.2d at 49). Pursuant to Indiana statutory authority, a person commits attempted murder if the person knowingly or intentionally attempts to kill another human being. Ind. Code §§ 35-42-1-1; 35-41-5-1. A person attempts to commit a crime "when acting with the culpability required for the commission of the crime, [the person] engages in conduct that constitutes a substantial step toward commission of the crime." Ind. Code § 35-41-5-1. A person commits intimidation if a person communicates a threat to another person with the intent that the other person be placed in fear of retaliation for a prior lawful act. Ind. Code § 35-45-2-1. The offense is a Class C felony if the person draws or uses a deadly weapon while communicating the threat. *Id*. A person commits Class D felony strangulation if the person "in a rude, angry, or insolent manner, knowingly or intentionally: (1) applies pressure to the throat or neck of another person … in a manner that impedes the normal breathing or blood circulation of the other person." Ind. Code § 35-42-2-9.

In the instant matter, White does not claim, and review of the above-stated statutory authority does not support a conclusion, that the charges of attempted murder, Class C felony intimidation, and Class D felony strangulation have the same essential statutory elements. As such, White's conviction for each of these crimes does not violate the statutory elements test

set forth in *Richardson*.

## 2. Actual Evidence

Under the "actual evidence" test, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish all of the essential elements of a second challenged offense. [*Richardson*, 717 N.E.2d] at 53. "Application of this test requires the court to 'identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective[.]'" *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008) (quoting *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002)). Therefore, we consider the essential elements of the offenses, the charging information, the jury instructions, the evidence, and the arguments of counsel. *Id*. The term "reasonable possibility" "turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions." *Id*. at 1236.

*Bunch*, 937 N.E.2d at 845-46.

During trial, the jury heard evidence that White attempted to kill Cordill. Specifically, Cordill testified that White stabbed her multiple times with a knife from her kitchen. Cordill stated that White stabbed her in the wrist, inner and outer thigh, upper arm, stomach, and breasts.

The jury also heard evidence that White threatened Cordill while drawing or using a deadly weapon. Specifically, Cordill also testified that while still armed with the knife, White told her that if "I can't have you nobody will." Tr. p. 140. Again, it was reasonable for the jury to infer from this statement that White threatened Cordill by expressing the intention to injure or kill Cordill in retaliation for Cordill's expressed desire to end their romantic relationship.

In addition, the jury also heard evidence that White strangled Cordill. Specifically,

9

Cordill testified that after she was able to take the knife away from White, White put both of his hands around her neck, pushed her down hard, and choked her. While White was choking her, Cordill was unable to breathe and was gasping for air. Unable to stop White from choking her, Cordill eventually passed out.

Cordill's above-stated testimony provided separate evidence from which the jury could determine that White was guilty of attempted murder, Class C felony intimidation, and Class D felony strangulation. Further, the fact that the intimidation charge was enhanced by White's act of drawing or using the same knife that he used to repeatedly stab Cordill does not, in and of itself, create a double jeopardy violation. *See Seide v. State*, 784 N.E.2d 974, 979 (Ind. Ct. App. 2003) (providing that the defendant failed to show any sort of double jeopardy violation for enhancing six different crimes committed with the aid of the same weapon used six times). As such, we conclude that White has failed to demonstrate that there is a reasonable possibility that the jury latched on to exactly the same facts for each of the challenged convictions.

## B. Continuing Crime Doctrine

White alternatively claims that his convictions for attempted murder, Class C felony intimidation, and Class D felony strangulation are barred by the continuing crime doctrine. The continuing crime doctrine reflects a category of Indiana's prohibition against double jeopardy. *Walker v. State*, 932 N.E.2d 733, 736 (Ind. Ct. App. 2010). The continuing crime doctrine does not apply to factual situations where a defendant is charged with two or more distinct chargeable crimes. *Id*. at 737 (citing *Firestone v. State*, 838 N.E.2d 468, 472 (Ind.

10

Ct. App. 2005)). The continuing crime doctrine applies only to those situations where a defendant has been charged multiple times with the same offense, which includes two scenarios. *Id*. "First, a defendant is charged multiple times with the same offense when he or she is charged multiple times with one offense." *Id*. "Second, a defendant is charged multiple times with the same offense when he or she is charged with an offense and a lesser included offense." *Id*.

In support of the claim that the challenged convictions are barred by the continuing crime doctrine, White appears to argue that his actions were all part of the same continuing crime because they were committed in the same location, over the course of a short period of time, and facilitated a single purpose. In *Walker*, the defendant made similar arguments, claiming that his convictions for burglary, robbery, and criminal confinement were all part of the same continuing crime because they occurred over the course of a short period of time and facilitated a single purpose. *Id*. Upon review, we disagreed and concluded that the continuing crime doctrine did not apply because the defendant was convicted of three distinct chargeable crimes and was not faced with multiple charges of one offense or charges of an offense and a lesser included offense. *Id*. at 738.

Like in *Walker*, we similarly conclude that White's convictions for attempted murder, Class C felony intimidation, and Class D felony strangulation are not barred by the continuing crime doctrine. White does not argue, and the record does not support a conclusion, that he was faced with multiple charges for one offense or charged with an offense and a lesser included offense. Rather, each of the challenged convictions represents

11

a separate, chargeable crime. The record demonstrates that White attempted to kill Cordill.

He also threatened and strangled her. White's actions did not constitute a single criminal act

but rather three distinct criminal acts. As such, White's claim in this regard must fail.

### III. Whether the Charging Information Relating to the Auto Theft Charge Contains a Fatal Variance

White next contends that there is a fatal variance in the charging information relating

to the auto theft charge.

> "A variance is an essential difference between proof and pleading." *Allen v. State*, 720 N.E.2d 707, 713 (Ind. 1999) (citing *Mitchem v. State*, 685 N.E.2d 671, 677 (Ind. 1997)). A variance does not necessarily require reversal, however. *Broude v. State*, 956 N.E.2d 130, 135 (Ind. Ct. App. 2011) (citing *Mitchem*, 685 N.E.2d at 677), *trans. denied*. The test to determine whether a variance is fatal is:
> > (1) was the defendant mislead by the variance in the evidence from the allegations and specifications in the charge in the preparation and maintenance of his defense, and was he harmed or prejudiced thereby;
> > (2) will the defendant be protected in [a] future criminal proceeding covering the same event, facts, and evidence against double jeopardy?
> *Id*.

*Coy v. State*, 999 N.E.2d 937, 945 (Ind. Ct. App. 2013).

> With respect to the auto theft charge, the charging information alleged that:

> on or about the 21st day of June, 2013, in the County of Allen and in the State of Indiana, said defendant, Harry White, II, did knowingly or intentionally, exert unauthorized control over the motor vehicle of another person, to wit: Charles Cordill, with the intent to deprive Charles Cordill of the vehicle's value or use, being contrary to the form of the statute in such case made and provided.

Appellant's App. p. 16.

White claims that because theft is a crime which violates the possessory rights of another person, the charging information contains a fatal variance as it alleged that White exerted unauthorized control over the vehicle of Cordill's father rather than Cordill. The State, for its part, argues that there is no fatal variance in the charging information because White was not misled by the charging information and also because White will be protected from a future criminal proceeding covering the same event. We agree with the State.

Review of the record reveals that the vehicle in question was registered to Cordill's father, Charles. With Charles's apparent permission, the vehicle was used mostly, if not exclusively, by Cordill. Cordill also made loan payments on the vehicle. Although it is possible that White might not have been aware that the vehicle in question was registered and belonged to Charles, White knew Charles and was aware of his connection to Cordill. Further, only one vehicle was involved with White's criminal acts. White, who had been in a six or seven-year romantic relationship with Cordill, undoubtedly knew that Cordill drove the vehicle in question. In addition, White took the key for this vehicle from Cordill's residence, without Cordill's permission, while fleeing Cordill's residence after attacking and threatening Cordill. From this evidence, we cannot say that White could have reasonably been misled by the alleged variance in the charging information.

In addition, White is protected from a future criminal proceeding covering the same event as any subsequent prosecution would violate the prohibitions against double jeopardy set forth in Article I, Section 14 of the Indiana Constitution. If the State were to recharge White with the theft of the vehicle, it would have to use the same evidence against White as

13

was presented during trial below, specifically that White took the vehicle from Cordill's residence without Cordill's permission. Because White cannot reasonably be said to have been misled by the alleged variance and would be protected from future prosecution for the theft of the vehicle in question, we conclude that the alleged variance is not fatal and does not require a reversal of White's conviction for Class D felony auto theft.

## IV. Whether White's Sentence Is Appropriate

White also contends that his aggregate forty-three-year sentence is inappropriate in light of the nature of his offenses and his character. Indiana Appellate Rule 7(B) provides that "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In analyzing such claims, we "'concentrate less on comparing the facts of [the case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character.'" *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (quoting *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002), *trans. denied*). The defendant bears the burden of persuading us that her sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

With respect to the nature of his offenses, the trial court stated that it found the nature of White's crimes to be "despicable." Sent. Tr. p. 13. The trial court noted that White attacked Cordill in her home after lying in wait for her to return. White stabbed Cordill multiple times, threated to kill Cordill in retaliation for Cordill attempting to end the romantic

14

relationship she shared with White, and choked Cordill to the point where she was unable to breathe. The trial court indicated that it found "what [White] did to [Cordill] was degrading and humiliating, and there was no need for it." Sent. Tr. p. 13. As a result of White's attack, Cordill suffered serious injuries as well as permanent pain and scaring.

With respect to his character, the trial court acknowledged that Cordill had written a letter to the court requesting leniency for White, but found that an aggravated sentence was appropriate in light of White's criminal history. The trial court noted that White is a multi-state offender, with criminal convictions from both Florida and Indiana. These convictions include three misdemeanor convictions and three felony convictions. White's criminal history also indicates that prior efforts at rehabilitation have failed. The trial court noted that while White's criminal history did not reflect "the most horrible record in the world," White has previously had probation and suspended sentences revoked. Sent. Tr. p. 13. The trial court also indicated that it found that "the escalation of [White's] criminal conduct is troubling." Sent. Tr. p. 13. White's criminal history and failure to conform his behavior demonstrates a total disregard for both the law and others. Upon review, we conclude that White has failed to meet his burden of proving that his forty-three-year sentence is inappropriate.

The judgment of the trial court is affirmed.

RILEY, J., and ROBB, J., concur.